## THE STATE ex rel. H. G. DUNHAM, Administrator, v. J. P. NIXON et al., Judges, etc.

In Banc, December 31, 1910.

1. **JURISDICTION: Courts of Appeals: Act of June 12, 1909.** The Act of June 12, 1909, empowering the judges of courts of appeals to transfer causes from one court of appeals to another court of appeals, is unconstitutional.

2. ——: ——: **Power to Hear and Determine.** The Constitution, in giving a court of appeals power "to hear and determine" cases transferred to it by the Supreme Court, and authorizing one court of appeals, when another court of appeals is created by legislative act fixing its territorial district, to transfer to such new court of appeals cases which by the act do not come within its territorial limits and authorizing said new court "to hear and determine" causes so transferred, did not create any new jurisdiction in the court of appeals to hear and determine causes, but used the words "to hear and determine" in reference to cases over which the court of appeals had already been given jurisdiction by the Constitution. Authority to transfer a case is not authority to confer jurisdiction.

3. ——: ——: ——: **Delegation of Legislative Authority.** The conferring of jurisdiction over a suit is a legislative act. Therefore, even if the General Assembly had constitutional power to confer appellate jurisdiction on a court of appeals over a case appealed to it from a county outside of the territorial limits of such court, the General Assembly would have no authority to delegate that power to a judicial tribunal by authorizing the judges of the courts of appeals to transfer a case from one of them to another.

Prohibition.

PEREMPTORY WRIT AWARDED.

*Joseph S. Laurie* and *W. B. & Ford W. Thompson* for relator.

*Morrow & Kelley* for respondents.

VALLIANT, J.—Relator asks a writ to prohibit the Springfield Court of Appeals from entertaining jurisdiction of a case transferred to that court from the St. Louis Court of Appeals by authority of an act of the General Assembly entitled, "An act to empower the judges of the courts of appeals of this State to transfer causes from one court of appeals to another court of appeals in this State, providing the method for such transfer and notice thereof to litigants and attorneys in the causes so transferred," approved June 12, 1909 (Laws 1909, p. 396). Relator contends that the act is unconstitutional, being contrary to section 12 of article 6 and sections 1, 2 and 3 of the amendment to that article of 1884.

The cause transferred from the St. Louis to the Springfield Court of Appeals was one wherein O. L. Houts, as plaintiff, obtained a judgment in the circuit court of the city of St. Louis in June, 1907, against George P. B. Jackson, as defendant, for $5038; Jackson took an appeal to the Supreme Court, which at that time had jurisdiction of appeals in causes when the amount in dispute was over $4500. But in 1909 the General Assembly passed an act giving jurisdiction to the courts of appeals where the amount in controversy did not exceed $7500, and requiring the Supreme Court to transfer causes then pending in this court and not under submission, to the proper court of appeals, "to be heard and determined." In obedience to that requirement this court transferred the case of Houts v. Jackson to the St. Louis Court of Appeals. Afterwards the St. Louis Court of Appeals, in December,

1909, transferred the cause to the Springfield Court of Appeals pursuant to the requirements of the Act of June 12, 1909, above mentioned, and the cause was set for hearing in that court at its March term, 1910. In the meantime appellant, Jackson, died intestate, and relator herein was appointed administrator of his estate, and in due time, as such administrator, he filed a motion in the Springfield Court of Appeals to return the cause to the St. Louis Court of Appeals, on the grounds, first, that the Springfield Court of Appeals had no jurisdiction of the cause; second, that the Act of the General Assembly of June 12, 1909, was unconstitutional. The court overruled the motion and also overruled a motion for rehearing. Then the relator filed his petition in this court praying a writ of prohibition. The cause is now held in suspense in the Springfield Court awaiting the decision of this court on the question involved.

The relator in his petition challenges the jurisdiction of the Springfield Court on only one ground, that is, the alleged unconstitutionality of the Act of June 12, 1909, and, on the other hand, the only ground on which that court claims jurisdiction is that the cause was regularly transferred to it under the requirements of that act, so, therefore, the constitutionality of the act is the only controversy in this case.

The purport of the act in question is to confer on the judges of the courts of appeals authority to transfer causes from one of those courts to another "so as to divide all cases pending equally among said courts as near as practicable."

The governmental power to establish courts and to define their jurisdictions is legislative in its character, belongs to the General Assembly, and is limited only by the Constitution. Therefore the General Assembly has the power to pass this act unless its power in that respect is restricted by some provision of the Constitution.

·When the Constitution speaks on a subject, to the extent that it disposes of the matter, it ends all legislation concerning it. · In section 1 of article 6 all judicial power of the State is given to certain courts therein named, and the sections following in that article specify the jurisdiction that is given to each court. When jurisdiction of a certain character is by that article conferred on a particular court, the jurisdiction so conferred is exclusive unless in the clause conferring it or elsewhere in the Constitution the same jurisdiction, or jurisdiction of the same character, is conferred also on another court. For example, when appellate jurisdiction coextensive with the State is conferred by section 2 of article 6 on the Supreme Court, all the judicial power appertaining to an appellate court would be disposed of if it were not for the fact that elsewhere in the Constitution jurisdiction of that character, in a limited degree, is conferred on other courts, and to that extent the jurisdiction conferred in section 2 on the Supreme Court is curtailed. Appellate jurisdiction in a limited degree is in other sections conferred on the courts of appeals, and section 22 of article 6 confers jurisdiction of that character, in a limited degree, on circuit courts.

Until the amendment of the Constitution in 1884 there was besides the Supreme Court but one appellate court, which was the St. Louis Court of Appeals, and its jurisdiction was limited in territory covering the city of St. Louis and four counties. [Section 12 of article 6.] But that court's appellate jurisdiction in that territory was exclusive, all appeals being required to go to that court in the first instance, but in cases of certain characters appeals lay from that court to the Supreme Court. By the amendment of 1884 the territorial jurisdiction of the St. Louis Court of Appeals was extended to embrace a large number of counties, and the Kansas City Court of Appeals was created covering the rest of the State. By that amendment also

no appeal was allowed from a decision of one of those courts to the Supreme Court, but their appellate jurisdiction was limited to cases where the amount in dispute did not exceed $2500, and within that limit they were courts of last resort. By that amendment also the General Assembly was authorized to create one more court of appeals, to change the limits of appellate districts, and to raise the limit of the pecuniary jurisdiction of those courts. Under that authority the General Assembly in 1901 (Laws 1901, p. 107) raised the pecuniary limit to $4500, and in 1909 created the Springfield Court of Appeals (Laws 1909, p. 393) and raised the pecuniary limit to $7500 (Laws 1909, p. 397). Then at the same session the General Assembly passed the Act of June 12, 1909, under which the case of Houts v. Jackson was transferred to the Springfield Court, which act is now assailed as being unconstitutional.

Unless expressly authorized to do so a court has no authority to transfer a cause from it to another court and thereby give the other court possession of the case "to hear and determine it," although the other court would have had jurisdiction of the case if it had come to it by due process. The conferring of jurisdiction belongs to the lawmaking power of the State. If, without the express power to transfer, a court should find itself in possession of a case of which it had no jurisdiction, the only thing it could do would be to dismiss it or strike it from its docket. But ever since the adoption of the Constitution of 1875, by which the St. Louis Court of Appeals was created, it has been the practice of this court to transfer to that court causes within its jurisdiction, which have been brought to this court on appeal, and in like manner that court has transferred causes on its docket to this court when they are within the jurisdiction of this court, and the same practice has prevailed in reference to the other courts of appeals since their creation. But those acts

are expressly authorized either by the Constitution it-
self or by statutes passed with constitutional authority.

Section 19 of article 6, is: ''All cases which may
be pending in the Supreme Court at St. Louis at the
time of the adoption of this Constitution, which by its
terms would come within the final appellate jurisdic-
tion of the St. Louis Court of Appeals, shall be certified
and transferred to the St. Louis Court of Appeals to be
heard and determined.'' Section 7 of the Amendment
of 1884 requires that all cases pending in the Supreme
Court which after the adoption of the amendment are
within the ''territorial appellate jurisdiction of the
Kansas City Court of Appeals, shall be certified
and transferred to such court, 'to be heard and deter-
mined by it.'' Section 3 of the Amendment, which is
the authority under which it is claimed the General
Assembly acted when it passed the Act of June 12,
1909, is as follows: ''The General Assembly shall
have power by law to create one additional court of
appeals, with a new district therefor; to change the
limits of appellate districts, and the names of the
courts of appeals, designating the districts by numbers
or otherwise; to change the time of holding the terms
of said courts; to increase or diminish the pecuniary
limit of the jurisdiction of the courts of appeals; to
provide for the transfer of cases from one court of ap-
peals to another court of appeals; to provide for the
transfer of cases from the court of appeals to the Su-
preme Court, and to provide for the hearing and the
determination of such cases by the courts to which they
may be transferred.''

Counsel for respondents say that conferring au-
thority to hear and determine is the same as conferring
jurisdiction, and since the authority is given the Gen-
eral Assembly in section 3 to provide for the transfer
of cases and ''to provide for the hearing and determin-
ing of such cases by the courts to which they may be
transferred,'' it is the same as giving authority to the

General Assembly to provide for conferring jurisdiction on a court which otherwise did not have jurisdiction. The counsel contend that the last words of that section, "and to provide for the hearing and determination of such cases by the courts to which they may be transferred," have the same significance as if it had said, "and to provide for the conferring of jurisdiction of such cases on the courts to which they may be transferred," and consequently the General Assembly was thereby empowered to authorize the judges of those courts to transfer cases from one to the other, and to thereby confer on the court to which the cases are transferred jurisdiction to decide them. But that is not the language of the Constitution, nor its meaning. The Constitution itself had already declared the jurisdiction of those courts, both as to the amount in dispute and as to territory, and it had expressly authorized the General Assembly to alter the limit as to the amount and to alter the limits of the districts, and that was the extent to which it authorized the General Assembly to go in changing the jurisdiction. It did not authorize the General Assembly to make a change in the jurisdiction which the Constitution had already established by giving to a court of appeals authority to hear and determine an appeal in a case coming from a trial court outside of its territorial limits. The words "to be heard and determined" are used in two other sections in the Constitution in reference to the transfer of cases from an appellate court to another, and in both those sections the words are used in reference to cases to be transferred to courts which already had jurisdiction of them and which no other court could hear and determine. Section 19, article 6, requiring the Supreme Court to transfer cases to the St. Louis Court of Appeals "to be heard and determined" specifies that the cases to be so transferred are those "which by its terms would come within the final apellate jurisdiction" of that court. The words "to be heard and

determined'' were certainly not used in that section as
conferring jurisdiction, but were used in reference to
cases over which that court had jurisdiction already.
The same is true of the words ''to be heard and de-
termined'' used in section 7 of the Amendment of 1884
in reference to the transferring of cases to the Kansas
City Court of Appeals; they are there used in express
terms in reference to cases that ''would come within
the territorial jurisdiction of the Kansas City Court of
Appeals.'' The jurisdiction was not conferred by the
authority to transfer ''to be heard and determined,''
but the authority to transfer to that court ''to be heard
and determined'' was given because the cases to be
transferred belonged to that court, and came within
the terms already prescribed by the Constitution con-
ferring the jurisdiction, and that is the sense in which
the same words are used in section 3.

If, without the express authority in the one court
to transfer, and in the other to receive and to proceed
to hear and determine, an appeal by mistake should go
to one of the courts of appeals when it should have
gone to another, and should by the one be transferred
to the other, the latter could not hear and determine
it, because it had not come in a way pointed out by
law, but these provisions in our Constitution and stat-
utes were designed to require the court to take posses-
sion of the case, if within the already prescribed limits
of its jurisdiction, and to hear and determine it as if it
had come into the right court in the first place by ap-
peal.

That is the construction the General Assembly has
always put on those words in this connection. In 1901
when the General Assembly raised the pecuniary limit
of jurisdiction of the courts of appeals to $4500 it said:
''All cases now pending in the Supreme Court, which
have not been submitted, and which by the provisions
of this act come within the jurisdiction of said courts
of appeals, shall be certified and transferred to the

proper courts of appeals to be heard and determined by them.'' [Laws 1901, p. 108.] That is, if the case was within the jurisdiction of one of the courts of appeals it should be transferred to that court, and since all the courts of appeals had jurisdiction of the same kind of cases the only fact to determine which was the ''proper court of appeals'' to which the case was to be transferred, was its territorial limits.

By the Amendment of 1884 the Constitution created a second court of appeals and defined the territorial jurisdiction of each court. Then it gave the General Assembly the power to create a third court of appeals, and to carve out a district for it, and ''to change the limits of the appellate districts.'' Thus the Constitution plainly indicated that each court of appeals was to have its territorial limits, and its jurisdiction to hear and determine cases was confined to those limits. The Legislature may change the limits, but it cannot give a court jurisdiction of a case outside its limits, the jurisdiction of the court is confined to the limits prescribed by law. In section 7 of the Amendment of 1884 we find the term ''territorial appellate jurisdiction,'' indicating that the jurisdiction of the court is confined to its territorial limits, and there is nothing to indicate an intention to confer a power on the General Assembly to undo what the Constitution itself had done.

Authority to transfer a case is not authority to confer jurisdiction. The conferring of jurisdiction, as we have already said, is a legislative act. If therefore it should be conceded that the General Assembly, in the face of the constitutional provisions above mentioned, had authority to confer on the Springfield Court of Appeals jurisdiction of appeals from the circuit court of the city of St. Louis, or on the St. Louis Court of Appeals jurisdiction of appeals from the circuit court of McDonald county, or on the Kansas City Court of Appeals jurisdiction of appeals from Pemiscot county, it

would not follow that the General Assembly could delegate that legislative power to a judicial tribunal. The Constitution requires that the judges of the courts of appeals be elected by the people in their respective districts, and it is the purpose to give to each district a court to be composed of judges of its own choice. So far as territorial jurisdiction is concerned, it is within the power of the General Assembly only as it may be affected by change of the districts. We are not now saying that a court of appeals can under no circumstances acquire jurisdiction of an appeal coming from outside of its territorial limits, or that the General Assembly has no power under any circumstances to authorize a transfer of a case to a court outside of the district, as for example like the transfer of a cause from one circuit court to another on change of venue, though even as to that we are not to be understood as giving or intimating any opinion, but what we say now is in reference to the facts of the case at bar. In the Act of June 12, 1909, the power attempted to be conferred is not dependent on the existence of any fact that might interfere with justice in the administration of the law in a given case, but the purpose is only to "equalize the business of the courts." The Constitution gives the General Assembly the power to equalize the business of those courts by prescribing their territorial limits, and if the General Assembly wishes to accomplish that purpose it must follow the method prescribed by the Constitution.

We hold that the act entitled "An Act to empower the judges of the courts of appeals of this State to transfer causes from one court of appeals to another court of appeals in this State, providing the method of such transfer and notice thereof to litigants and attorneys in the causes so transferred," approved June 12, 1909 (Laws 1909, p. 396), being now section 3939, Revised Statutes 1909, is unconstitutional and void. The

motion of respondents to dismiss this cause is over-ruled.

The writ of prohibition as prayed in the petition of relator is awarded, but without costs. *Gantt, Woodson* and *Graves, JJ.*, concur; *Lamm, J.*, not sitting; *Kennish, J., dubitante; Burgess, C. J.*, absent.