## JOHN H. NEIL et al., Appellants, v. CUNNINGHAM STORE COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted October 4, 1911. Opinion Filed November 7, 1911.

1. **SALES: Delivery of Damaged Goods: Liability of Vendor.** Where one sells goods f. o. b. cars at point of shipment, he is not liable for damages resulting from the damaged condition of the goods at destination, unless that condition resulted from the goods being in bad condition when loaded.

2. **APPELLATE PRACTICE: Conclusiveness of Findings of Fact.** The verdict of a jury, and the findings of fact of a trial judge in an action at law where there is an irreconcilable conflict of testimony, are conclusive upon the appellate court, provided that, in arriving at the findings, it is apparent error of law was not committed or the law misapplied.

3. **INSTRUCTIONS: Trial Before Court.** Where a jury is waived and the case is tried before the court, error seldom lies to the giving or refusing of declarations of law.

4. **SALES: Delivery of Damaged Goods: Measure of Damages.** The measure of damages, because of goods bought being in a damaged condition, is not the difference between the price at which the buyer had contracted for their resale and the best price he could obtain for them in their damaged condition, but is the difference between their market value, had they been in good condition, and their market value in their damaged condition.

5. ————: ————: **Damages: Place of Market Value.** Where one sells goods to be loaded by him on cars, without any understanding as to where they are to be shipped, the market value at the point to which the buyer ships is not a proper element to consider in estimating the damages sustained by reason of their poor condition.

6. ————: **Overcharge in Weight: Measure of Damages: Instructions: Harmless Error.** In an action to recover damages on account of corn sold by defendant being delivered to plaintiff in a damaged condition and for overcharge in weight, the court, at the request of defendant, declared the law to be, that if the corn was billed to and paid for by plaintiff at a greater weight than it weighed, then plaintiff was entitled to recover the difference in value of said corn, based on its actual weight, and if plaintiff had already paid for it at an erroneous weight, then

160 App.—33

he should recover such sum as he had overpaid. Plaintiff, in a letter to defendant, laid the loss arising from the shortage in weight at $100. The court found for defendant on the claim that the corn was delivered in a damaged condition, and in favor of plaintiff for $129.96 on the overcharge claim, and plaintiff appealed. *Held*, that the declaration of law, while not accurately drawn, was not so faulty as to constitute reversible error, and that the allowance on the overcharge claim being greater than plaintiff had demanded in his letter, he had no cause to complain.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Shepard & Shepard* for appellants.

*Faris & Oliver* for respondent.

REYNOLDS, P. J.—Plaintiffs brought their action against defendant, claiming damages in the sum of $584.27, arising out of a breach of contract in the sale by defendant to plaintiffs of two carloads of corn. On a trial of the case before the court, a jury having been waived, there was a finding and judgment in favor of plaintiffs for $126.90. From this judgment, plaintiffs in due time appealed to this court. The cause was transferred by us to the Springfield Court of Appeals under the provisions of section 3939, R. S. 1909, and the judgment of the circuit court reversed. Thereafter the cause was transferred back to us in consequence of the holding of the Supreme Court, that the Act of the General Assembly (Acts 1909, p. 336, Sec. 3939, supra), was unconstitutional and that all judgments rendered by the Springfield Court of Appeals in causes so transferred were void. [State ex rel. Dunham v. Nixon, 232 Mo. 98, 133 S. W. 336; State ex rel. St. Louis Dressed Beef & Provision Co. v. Nixon, 232 Mo. 496, 134 S. W. 538; State ex rel. O'Malley v. Nixon, 233 Mo. 345, 138 S. W. 342.] A

statement of the pleadings and facts in this case, as well as the opinion of the Springfield Court of Appeals, will be found reported under this same title, in 149 Mo. App. 53, 130 S. W. 503. As the pleadings are there fully stated, we will not repeat them here. In the view we take of the case, we will make our own statement of the testimony, taking that as abstracted by counsel for appellants.

It appears that plaintiffs are a co-partnership, trading under the name Interstate Grain Company, with their chief office at Nashville, Tennessee. They were engaged in buying corn in Missouri, through an agent, and in the case before us, bought of defendant two loads of corn in the shuck, at forty-five cents per bushel, f. o. b. cars at or near Caruthersville, in this state. The cars were loaded about November 16, 1907. Defendant thereupon made two drafts on plaintiffs, one for $363.60, for 808 bushels of corn, and one for $281.25 for 625 bushels. The drafts were attached to the bills of lading, sent to plaintiffs and paid by them —when paid is not clear, but they appear to have been sight drafts, and to have been paid when presented and before the cars reached Eufaula. One car reached Eufaula, Alabama, November 29, the other December 3d.

In a letter from plaintiffs to defendant, notifying the latter of the bad condition of the corn, plaintiffs write that they are "advised by the party to whom we shipped the car of corn at Eufaula, that one car," etc. So that it seems that while sold to plaintiffs f. o. b. Caruthersville and billed to them and bills of lading made out to plaintiffs and drafts drawn on plaintiffs, the cars had been ordered sent by plaintiffs direct to Eufaula, to the R. M. Jennings Brokerage Company. Unfortunately neither the bills of lading nor drafts are in the abstract but they appear to have been dated November 16, 1907. When the carloads of corn arrived at Eufaula and were opened, accord-

ing to the depositions of five witnesses, deposing on behalf of plaintiffs, and the oral testimony of one of the plaintiffs, testifying in chief, the corn was found to be wet and heated and mouldy and sprouted. These witnesses gave it as their opinion that it must have been frozen or frostbitten when it was loaded, the shucks and ears being hot and black with mildew, the corn mildewed and partially sprouted. The Jennings Brokerage Company, with the co-operation of one of the plaintiffs, had the corn removed from the cars and placed in the warehouse, where it was so handled that it was sold at Eufaula by plaintiffs or on their account by their brokers, at forty cents a bushel. There was testimony tending to show that plaintiffs or their consignees had sold the corn to arrive at Eufaula at seventy-five cents a bushel and that that was the fair market value at that place and time of sound corn in the shuck. Plaintiffs introduced testimony tending to show the amount of expense incurred by them in connection with caring for the corn at Eufaula. This, over the objection and exception of defendant. All the witnesses for both parties testified that the cars in which this corn was loaded, one of them a box car, the other a cattle car, were in good condition. The witnesses on part of plaintiffs further testified that in their opinion the corn could not have been damaged in transit. On the part of defendant, eight witnesses testified, in effect, that they had helped load this corn or had seen it loaded; some of them had planted and gathered it; one or more of them who had sold a part of it to defendant, testified that at the time when they took out this corn, they had taken part of the same lot, stored it in cribs and still had it, and that it was sound and dry. All gave testimony tending to prove that when these two cars were loaded the corn was sound, well cured, in good condition, with no signs of frostbite, mildew or dampness. In rebuttal five witnesses for plaintiffs testified, in effect, that they had

noticed some of the corn when it was being shipped and in their opinion it was not sound or matured and dry corn.

The corn in question was purchased from defendant for delivery to plaintiffs on board cars at or about Caruthersville. It was delivered about the 16th of November in the cars to plaintiffs and plaintiffs took charge of it then and there, as shown by their letter heretofore referred to, and ordered its transportation to Eufaula. The question of liability in the case turns on the condition of this corn at the time it was loaded into the cars, and there is positive testimony by several witnesses that at that time it was sound, dry, in good condition. One car was in transit from the 16th of November to the 29th of that month, a period of thirteen days; the other car until the 3d of December, a period of seventeen days. During this intervening time the corn was at the risk of plaintiffs. While it is true that the testimony is positive that the corn reached Eufaula in bad condition, the testimony of those witnesses who there saw it as to what caused the bad condition, is a matter of opinion. However strong the probabilities may have been that if the corn had been sound when loaded, it could not have been in the condition it was found to be when received, these probabilities rested on matter of opinion. Obviously the learned trial judge preferred to accept the positive testimony of parties who had loaded it or seen it loaded against this opinion testimony, testimony founded on probabilities and not on actual facts. In short, weather conditions, the delay in transit, the change of climate from Missouri to Alabama, may in the opinion of the trial judge, account for the difference in the condition of the corn when shipped and that in which it arrived at its destination. The defendant in this case was only responsible for the condition of the corn when delivered on board cars at or about Caruthersville and was not in any manner what-

ever responsible for the condition in which it arrived at Eufaula, unless that condition was the result of the corn having been in bad condition when loaded, and there is affirmative evidence that this was not the fact.

There was no denial of the fact that the quantity of corn drawn for and invoiced and paid for by plaintiffs, was more than the quantity actually shipped; that the shipment was short several hundred pounds in weight over the quantity paid for. The court allowed for this and awarded plaintiffs the difference.

To put the matter briefly, there is an irreconcilable conflict in the testimony in the case over the real issue in the case. That being so, a verdict of the jury is conclusive upon the appellate court. So in an action at law, is the finding of the trial judge. It matters not whether the testimony produced before the trial judge is given orally or by way of deposition. In either event, he is the judge and the trier of fact. If there is substantial evidence to support that finding, the appellate court has nothing else to do and no power to do anything, other than confirm that finding, provided, that in arriving at the finding, it is apparent that error of law has not been committed or the law misapplied.

In the case at bar, we find nothing to warrant us in saying that the trial court erred in law.

At the request of plaintiffs the court gave four declarations of law and refused three. At the instance of defendant it gave one. It will serve no useful purpose to repeat here the declarations of law given at the instance of plaintiffs, nor to notice those refused, except as to one. In the fifth declaration of law, which was asked by plaintiffs and refused, the court was asked to declare the law to be, "that if the finding is for the plaintiffs, they should be allowed such sum in damages as the evidence shows to be the difference between the price they had the corn sold for at Eu-

faula, Alabama, and the best price they could obtain for same in its damaged condition, together with the amount, if any, that the court finds plaintiffs necessarily expended in taking care of said corn to prevent same from being a total loss; and the court find and believe from the evidence that said two cars of corn were billed out and paid for by plaintiffs at a greater weight than the correct weight of same, then the court should also allow plaintiffs the difference between the amount they paid for said corn and the amount they should have paid for same had the weights been correct.'' Waiving the proposition that in a case tried before the court, a jury being waived, error seldom lies to the action of the court in giving or refusing declarations of law, we hold as to this declaration, that it was properly refused; if for no other reason because it placed the damage at the difference between the price plaintiffs had the corn sold for at Eufaula and the best price they could obtain for the same in its damaged condition. Without passing on the question as to whether the market value at Eufaula or at Caruthersville was to be taken, because in the view we take of the case that matter is immaterial, in no event was it correct to say that the measure of damage was the difference between the price plaintiffs had sold the corn for at Eufaula and the best price they could obtain for the same in its damaged condition. If the Eufaula market was to be accepted, then this instruction should have been that plaintiffs were entitled to the difference between the market value of the corn at Eufaula, if it had arrived there in good condition, and the market value there of that same corn in its damaged condition. The price at which plaintiffs had sold the corn at Eufaula was no measure of value which would be binding in this case upon defendant. This declaration as asked, with this rule announced, was fatally wrong. This was the only declaration on

the measure of damage which was asked.  It was properly refused for the reason we have given above.

Moreover, there is not a particle of testimony in the case justifying any inference that it was in contemplation between the parties when the corn was bought and sold that it was intended for the Eufaula market.  According to the testimony of Mr. Schofner, one of the plaintiffs, the corn was bought through an agent of plaintiffs, and the only thing that Mr. Schofner testifies to as to the transaction, is that plaintiffs bought the corn f. o. b. cars "supposed to be at Caruthersville."  There is not a word in the testimony intimating that defendant had any knowledge whatever as to where plaintiffs intended to ship this corn. As the headquarters or offices of plaintiffs were at Nashville, Tennessee, defendant might well assume that the corn was to be shipped to that point.  But that is immaterial, for there is no testimony in the case that defendant sold with reference to delivery at Eufaula.  All that defendant was to do was to load it on the cars at or near Caruthersville; when this was done the loaded cars were thereafter at the order and risk of plaintiffs.  There is, therefore, no justification whatever, by anything in the testimony, for accepting the market value of corn at Eufaula, Alabama, as a proper element in estimating the damage in this case.

The only declaration of law given at the instance of defendant was to the effect that if the court found from the evidence that the cars of corn or either of them were billed out at a greater weight to plaintiffs and paid for by plaintiffs at a greater weight than said cars or either of them weighed, then plaintiffs are entitled to recover the difference in value of said corn, based upon the actual weight of said corn, and if the court finds that plaintiffs have already paid for said corn at an erroneous weight, then they should recover such sum as the plaintiffs have so overpaid.  This

declaration is not accurately drawn but is not so faulty as to constitute reversible error.

In a letter to defendant, plaintiffs laid the loss arising over the shortgage in weight at $100. The court allowed them $126.96. Plaintiffs have no cause to complain of this.

In view of the evidence in the case, its weight and credibility being for the trial court, we are unable to find any ground upon which the judgment of the circuit court of Pemiscot county in this case should be reversed. Our conclusion is that it should be affirmed and it is so ordered. *Nortoni, J.,* and *Caulfield, J.,* concur.