140 So. 764

J. E. ROSS & CO. et al. v. COLLINS.

6 Div. 966.

Supreme Court of Alabama.

March 31, 1932.

B. F. Smith, of Birmingham, for appellants.

J. B. Powell, of Jasper, for appellee.

454

GARDNER, J.

Ross & Co., a corporation, owned a coal mine known as No. 3, and in which W. E. Collins, while working in the line and scope of his employment, received injuries for which the trial court has awarded compensation under our workmen's compensation statute.

The defense is that Collins was an employee of McGough & Segars, partners, who were independent contractors with the owners, and therefore no compensation could be awarded in this suit against Ross & Co. because relationship of employer and employee did not exist. It appears there was a written agreement between Ross & Co. and McGough & Segars wherein it is stated that Ross & Co. "leases this mine" to McGough & Segars. The owner was to receive a royalty on each ton of coal and all coal loaded on railroad cars was to be sold to the owner, the price of which was agreed upon and fixed, but coal sold to houses at Nauvoo and vicinity was to "be handled by" McGough & Segars, and the royalty is therein fixed. "All supplies furnished, accounts stood for, insurance, power bills, etc., will be deducted from above coal and the balance remitted to second party as specified. * * * It is agreed and understood that first party is to have supervision of the mine and machinery and equipment."

The owner, under this contract, furnished the mine and all equipment and furnished the money to pay the wages of the workmen; not only so, but also carried liability insurance, paid the premiums, and charged the premiums to McGough & Segars, as agreed. And in Finkbine Lumber Co. v. Cunningham, 101 Miss. 292, 57 So. 916, it was held that the fact of carrying such liability insurance was "strong proof" tending to show the relationship was that of master and servant. One Tarwater was foreman around that mine and employed by Ross & Co., "came and went through the mine and made suggestions about the manner in which it should be operated." Ross was manager of Ross & Co., and his several letters offered in evidence show his construction of the language of the contract, providing for Ross & Co. to have "supervision of the mine," was that he should control the means and agencies by which the work was to be done, and by which the result was to be produced, and that he had the right to direct the manner in which the business should be done as well as the result to be accomplished. General Exchange Ins. Corp. v. Findlay, 219 Ala. 193, 121 So. 710. And the evidence of Segars shows their construction of the language of the contract to be in accord with that of Ross. He testifies that Ross told him what part of the mine to work and stopped them at certain parts, and that he "received and got instructions from J. E. Ross during the time I operated there." Ross was at the mine often, and in one of his letters warned Segars to "let no more accidents happen." As previously noted, Ross & Co. furnished everything, even including the pay of the workmen, and supervised and directed the work, apparently to the same extent as if operating the mine itself, shipped the coal and collected for it, being only relieved of the actual employment of the workmen in the mine.

Whether or not (our workmen's compensation statute aside) the evidence would warrant the conclusion that the written contract was a mere form, and that in fact McGough & Segars mere factors or agents of Ross & Co. operating for compensation of so much per ton of coal mined and sold (Note, volume 7, Neg. and Compensation Cases pp. 1078–1079; Finkbine Lumber Co. v. Cunningham, supra), we need not stop to inquire. This for the reason that our compensation statute (section 7585, Code 1923) has defined the relationship under such a state of facts which is of controlling influence here (Ex parte Smith Lumber Co., 206 Ala. 485, 90 So. 807; Sloss-Sheffield Steel & Iron Co. v. Crim, 219 Ala. 148, 121 So. 408), and the only inquiry here presented is whether or not there is any legal evidence in support of the conclusion of the trial court to the effect that the proof brings the case within the compass of the statute (Cohen v. Birmingham Fabricating Co., ante, p. 67, 139 So. 97).

The above-noted statute (Code, § 7585), after condemning any fraudulent scheme to avoid compensation liability, contains the following provision here pertinent: "But this section shall not be construed to cover or mean an owner who lets a contract to a contractor in good faith, nor to a contractor who; in good faith, lets to a subcontractor, a portion of his contract; but no person shall be deemed a contractor or subcontractor so as to make him liable to pay compensation within the meaning of this section, who performs his work upon the employer's premises, and with the employer's tools or appliances and under the employer's directions; nor one who does what is commonly known as 'piece work,' or in any way where the system of employment used merely provides a method of fixing the workman's wages."

There was evidence tending to show that, by virtue of the foregoing provision of our statute, McGough & Segars would not be deemed contractors, liable to pay compensation to the workmen in the mines; that the work done by them was done on the premises of Ross & Co., with the latter's tools, appliances, and equipment and under the latter's direction; and that the contract was a mere method of fixing compensation.

It was clearly not intended that the workmen go without protection, under such circumstances, and the statute was meant to rest the liability, in a proper case, under such tendencies of the proof, upon the owner.

Sloss-Sheffield Steel & Iron Co. v. Crim, supra; section 7585, supra.

We think the facts of the case suffice to bring it within the influence of this statute, and that the petition should be denied and the judgment affirmed.

Writ denied. Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.