68 So.2d 841

**ALLEN v. ZICKOS.**

8 Div. 992.

Court of Appeals of Alabama.

Aug. 11, 1953.

Rehearing Denied Dec. 1, 1953.

Bradshaw, Barnett & Haltom and E. B. Haltom, Jr., Florence, for appellant.

Mitchell & Poellnitz, Florence, and Jack Reed, Tuscumbia, for appellee.

364

PRICE, Judge.

T. R. Zickos instituted suit in the Law and Equity Court of Colbert County to recover damages to his automobile resulting from a collision with defendant's car at the intersection of Atlanta Avenue and Seventh Street in Sheffield.

The cause was tried by the court, sitting without a jury. A judgment was rendered for plaintiff for $291, and defendant appeals.

On March 16, 1950, defendant filed plea of the general issue. On April 12th she filed plea of recoupment, claiming $35,000 as damages, against plaintiff for personal injuries and property damage sustained by her in the same automobile collision, and on the same day she filed a motion for a transfer of the cause of action to the Circuit Court of Colbert County so that it might be consolidated in that court with a personal action there pending, filed against T. R. Zickos, which arose out of the same automobile collision involved here. The action of the court in overruling the motion to transfer is made the basis of appellant's first assignment of error.

The Colbert Law and Equity Court was established by an act of the legislature, ap-

proved June 27, 1947, Loc.Laws 1947, p. 25. The act provides that said court "shall have and exercise concurrent jurisdiction now conferred or which hereafter may be conferred upon the several circuit courts of the state, provided, however, that in cases at law, the amount involved, exclusive of interest and costs, does not exceed $3000.00."

Section 12 of said act provides in pertinent part as to transfer of cases, "all civil cases now or hereafter pending in the Circuit Court of Colbert County, Alabama, where the amount involved does not exceed $3000.00 * * * may be by agreement of the parties thereto transferred from the said Circuit Court to Colbert Law and Equity Court; that all cases in equity brought in the Colbert Law and Equity Court may, as a matter of right, be transferred from the said Colbert Law and Equity Court to the Circuit Court in Equity * * *."

Section 13 provides:

"That the procedure, practice and rules governing the Circuit Courts of Alabama now, or which hereafter may be adopted, shall in all things apply to and govern the procedure and practice of the Colbert Law and Equity Court except as otherwise provided herein."

■ "Unless expressly authorized so to do, a court has no authority to transfer a cause from itself to another court, and thereby give the other court possession of the case to hear and determine it, although the other court would have had jurisdiction of the cause if it had come to it by due process." 21 C.J.S., Courts, § 502, p. 769; Stoneman v. Coakley, 266 Mass. 64, 164 N.E. 802; State ex rel. Dunham v. Nixon, 232 Mo. 98, 133 S.W. 336.

■ The Colbert Law and Equity Court, having jurisdiction of the subject matter of the action and of the parties, had no power, in the absence of statutory provision, to transfer the case to the circuit court and the refusal to do so did not constitute reversible error. Authorities supra.

Appellant contends that under the provisions of Section 156, Title 13, Code 1940, the court was authorized to transfer the cause to the circuit court.

■ When a case has not been brought in the proper court, this section gives the court the right of transfer to the court in which the suit should have been filed. The jurisdiction of the trial court to proceed to final judgment cannot be seriously questioned and this code section is not here applicable.

■ Moreover, even if the court had had the power to transfer the cause, the filing of the pleas of recoupment and the general issue constituted a submission to the jurisdiction of the court and a waiver of such right by defendant. 3 Am.Jur., Appearances, Section 18; Ala.Dig., Appearance, ☜9(4).

The second assignment of error takes the point that the trial court erred in sustaining demurrer to appellant's plea of recoupment.

"As a general rule a court has no jurisdiction of a set-off or counterclaim in an amount in excess of its jurisdictional limit. But the defendant cannot oust the court of jurisdiction by setting up such a claim." 24 Cyc. 479; Annotation 37 L.R.A.,N.S., 606, or as stated by American Jurisprudence:

"The filing of a counterclaim in excess of the jurisdictional limit of the court does not oust the court of jurisdiction of the plaintiff's claim. The court should proceed to hear and determine the plaintiff's claim. So far as the deposition of the counterclaim is concerned, the court has no jurisdiction to hear and determine a set-off or counterclaim in excess of the jurisdictional amount." Section 221 (Courts) 14 Am. Jur. p. 416. And by Corpus Juris:

"In the absence of statutory provisions extending its jurisdiction a court may entertain a counterclaim, set-off, or reconvention only where it would have jurisdiction to entertain the claim originally; and the cross demand must be within the jurisdiction of the court as to subject matter."

80 C.J.S., Set-off and Counterclaim, § 12, p. 23.

■ The plea showing on its face the court's want of jurisdiction, demurrer taking the point of such defect of jurisdiction was proper, Rose v. Thompson, 17 Ala. 628; Campbell & Crawford, 63 Ala. 392; Tigrett v. Taylor, 180 Ala. 296, 60 So. 858, and under the authorities cited, supra, was properly sustained by the court.

Assignments of error 14, 15 and 16 take the point that the trial court committed reversible error in sustaining demurrers to pleas Nos. 3, 4, and 5.

Demurrers to said pleas were properly sustained.

It is appellant's contention that plaintiff is not the real party in interest and has no actual interest in the matter, since he carried insurance on his automobile, collected the insurance, and assigned his claim to the insurance carrier, and therefore, he has divested himself of the right to maintain this action.

■ It is well established in an action for the recovery of damages that the mere fact that the insured has been reimbursed by the insurer does not affect his right to maintain an action against the alleged wrongdoer who caused the damages, and whether the insurance company is entitled to the proceeds of any recovery is a matter which does not concern the defendant. Sturdivant v. Crawford, 240 Ala. 383, 199 So. 537; Government Street Lumber Co. v. Ollinger, 18 Ala.App. 518, 94 So. 177; Long v. Kansas City, Memphis & Birmingham Railroad Co., 170 Ala. 635, 54 So. 62, 63.

Also, the pleas are subject to the same criticism as that under consideration in the case of Long v. Kansas City, Memphis & Birmingham Railroad Company, supra, wherein the court observed:

"If it should be conceded (but it is not) that the assignment of a right of action based on a tort like this would be a good defense, still it does not follow that this plea is good. It alleges in the alternative

that the right of action was either assigned by the plaintiffs or that they agreed that the insurance company 'could have the judgment when obtained in this cause if a judgment is obtained.' This second alternative was certainly not sufficient. This alternative, if true, instead of being a defense to the suit, would impose the duty upon the plaintiff to prosecute it to judgment."

The pleas under consideration, after stating that plaintiff has assigned his cause of action to the insurance company, variously aver that "he has pledged to said company all of his claim in this case against the defendant; has pledged any recovery thereon."

Plea 4 states "plaintiff has pledged to said company his right of recovery of the cause of action in this case which he is now nominally prosecuting; has appointed the manager, or agent, of said company and their successors, attorney in fact with the irrevocable power to collect the claim represented by the cause of action now being prosecuted in this case."

Plea 5 states "said insurance company has paid to the plaintiff his damages caused to his automobile by its collision with an automobile driven by the defendant * * *; that the plaintiff has given the defendant notice that he has been so paid by an insurance company; by operation of law the cause or right of action herein sued on has now been subrogated to said insurance company paying said claim; plaintiff has pledged, assigned or transferred to said company his right of recovery of the cause or right of action in this case, which he is now nominally prosecuting; he has appointed the manager or agent of said company paying said claim, and their successors, attorneys in fact with the irrevocable power to collect the claim represented by the plaintiff's cause or right of action now being prosecuted in this case; and plaintiff has agreed with the said insurance company that any legal proceedings in the prosecuting of the cause or right of action in this case are to be under the exclusive direction and control of said insurance company."

■ Several assignments of error are predicated upon the action of the court in denying appellant's motion to require appellee to answer certain interrogatories propounded by the appellant. There was no reversible error in the court's action in this respect. By interrogatories 3 and 4 appellant sought information as to whether appellee had insurance coverage, and if so, the name and home address of the insurance company. Under the general rule, proof concerning indemnity insurance is not admissible in the trial of a cause. Ex. parte Bahakel, 246 Ala. 527, 21 So.2d 619. Appellant cites Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757; Smith v. Baggett, 218 Ala. 227, 118 So. 283; Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829–831; Ross & Co. v. Collins, 224 Ala. 453, 140 So. 764; Pittman v. Calhoun, 233 Ala. 450, 172 So. 263, as illustrative of exceptions to the general rule that such evidence may be admissible when necessary to fully present the issues or when it is collateral to other material facts or so associated or interwoven therewith as to be inseparable. The facts of this case present no exception to the general rule, and these authorities are not here applicable.

Interrogatory 7 is as follows:

"State whether or not said insurance company paid you the amount of damage of your automobile, occasioned by the aforesaid collision before the date on which you filed this suit in this court, towit, the 21st day of December, 1949. State what sum of money you were paid under the collision policy?"

■ Any sum received by way of insurance cannot be shown in mitigation of damages for the injury in an action against the person whose alleged negligence caused the injury. Authorities supra.

■ Interrogatories 9 and 10 request information as to whether the attorney appearing for plaintiff was employed by plaintiff or by the insurance company. The information called for by these questions was of no concern to defendant. Govern-

ment Street Lumber Co. v. Ollinger, supra; Sturdivant v. Crawford, supra.

Interrogatories A, B, C, D and E likewise call for evidence which was of no concern to defendant. They sought to elicit information from plaintiff as to whether he had collision insurance at the time of the collision, and if so, the name of the insurance company. They also sought a copy of the insurance policy.

There was no error in the court's action in this regard.

Plaintiff's witness Barber had testified he was employed as foreman of the body shop of the S. & M. Chevrolet Company when plaintiff's car was brought in for repairs after the collision. He gave a detailed description of the damage to the automobile. He was handed a photograph of the automobile, introduced as plaintiff's Exhibit 3 and stated the point of impact is shown as being right back of the front end, "the left front fender, the left front wheel had been damaged, and also broken glass in the left front door." He testified he had done body work on automobiles for twenty-one years, and during that time had repaired many automobiles that had been in wrecks. He also stated there was damage to the front end of the car which was repaired. He was then asked:

"On the basis of your long experience in repairing of automobiles, do you have an opinion as to the cause of the damage to the front end of the car?".

The grounds of defendant's objection were that "it is not shown that the witness is qualified in the giving of opinion evidence. That this is a matter of fact to be decided after they know what the damage to the injured part is and this witness is not qualified to give that and it involves the province of the court." The court overruled the objection and defendant excepted. The witness answered: "A. The grill did not have any wreck from the front, it was from the back and twisted." Defendant's motion to exclude the answer was overruled and defendant reserved an exception.

We are of the opinion the answer given by the witness was not harmful, and there was no prejudicial error in this instance. Supreme Court Rules of Practice, Rule 45, Code 1940, Title 7, Appendix.

Appellant contends the court erred in entering judgment for appellee and against appellant and in overruling the motion for a new trial on the grounds the verdict was contrary to the law, the facts and to the great weight of the evidence.

As heretofore stated, the collision occurred in the intersection of Atlanta Avenue and Seventh Street, on a Sunday evening around six o'clock. Atlanta Avenue runs north and south. Seventh Street runs east and west. Plaintiff was proceeding north on Atlanta Avenue. Defendant was driving east on Seventh Street. It was dark but a street light was burning. There was a stop sign on Seventh Street at the southwest corner of the intersection.

Photographs, taken at the scene of the accident, showing the streets and intersection, and pictures showing the appearance of the automobiles after the collision, were offered in evidence by both parties.

Plaintiff testified he was driving between 20 and 25 miles an hour, with his lights on. Before entering the intersection and when possibly two or three car lengths away, he glanced at both entrances to it and saw no lights or anything else, and then proceeded without slowing his speed. After he came into the intersection he heard screeching of brakes and tires and saw lights coming into his side. He immediately cut to the right and applied his brakes. Defendant's automobile struck the left side of plaintiff's car. Plaintiff's car came to a stop at the northeast curb, with the front wheels up over the curb and the back wheels in the street. Defendant's automobile came to rest at the steps of the house located on the northwest section of the intersection. Defendant was thrown from her car by the impact and was lying in the street near the left door of plaintiff's automobile. He testified dividing the intersection into quarters, the collision occurred in the southwest part of the north-

east quarter, to the east of the center of Atlanta and to the north of the center of Seventh. Mrs. Allen seemed to be traveling rather fast, possibly 35 or 40 miles per hour, and to the best of his knowledge, she did not stop at the stop sign.

On cross-examination plaintiff testified he based his judgment that Mrs. Allen did not stop at the stop sign on her speed, that she couldn't possibly have gathered that much speed after stopping, and based his judgment of her speed on the force of the impact. He reiterated that the first time he noticed an automobile coming east on Seventh Street into Atlanta was when he heard the screech of brakes and saw the lights. He was just into the intersection. Mrs. Allen was still on Seventh Street. The stop sign was around 20 feet west of the west line of Atlanta Avenue. Coming north on Atlanta Avenue a person could see west on Seventh Street 80 or 90 feet and from the intersection could see between 100 and 150 feet. He stated "I did look. I glanced to each side and there was nothing there, then my eyes were focused ahead and I couldn't see on every side and straight ahead too."

Mrs. Allen traveled possibly one half the distance of the street from the time he first saw her to the point of impact. The street is about 80 feet wide. The point of impact was to the rear of his left front fender.

Several witnesses for plaintiff and defendant living near the intersection testified to hearing the crash when the automobiles came together. None of these witnesses saw the automobiles before or at the time of impact.

Plaintiff's witness Andrew Vernon, who lived in the second house on the left of Atlanta south of the intersection, stated on cross-examination there is an open yard at the southwest corner of the intersection and standing in front of his house he could see on Seventh Street for approximately a quarter of half a block.

Mrs. Alvith B. Lynch, who lived next door to the Vernons with her house front-ing on Seventh Street, testified on cross-examination that standing in front of her house on Seventh Street it might be possible to see half a block south on Atlanta, and at the stop sign a driver could see south on Atlanta for a full block and probably more.

Mr. Elmer Watkins, a police officer for the City of Sheffield, arrived at the scene a few minutes after the accident with another officer, Mr. Aycock. He inspected defendant's automobile and found it in high or third gear. On cross-examination he said the street light was on. The stop sign on Seventh Street coming east is 30 feet back from Atlanta Avenue. A person driving east on Seventh Street when even with the stop sign could look south and see a car coming north for a block and a half or two blocks, and a person coming north on Atlanta Avenue as he came near the intersection could see down Seventh Street "approximately fifty feet, a half of a block. He could see the stop sign, maybe twenty feet below the stop sign, after he got to the intersection that wouldn't give him no time to stop though." After being shown a photograph of the intersection marked Exhibit A to the cross-examination of plaintiff he stated that from a designated point on the photograph looking west on Seventh Street a person could see approximately 100 feet. He also explained the operation of the gear shift on appellant's automobile and said it was in high.

Plaintiff introduced interrogatories propounded by him to defendant and defendant's answers.

Defendant's testimony given on the stand does not materially vary from that given in her answers to the interrogatories.

She testified she lived two blocks from the intersection and was en route to church at Annapolis and Seventh, one block from where the collision occurred. In her best judgment her speed from home to the intersection was 20 or 25. She was familiar with the stop sign at the intersection of Atlanta and Seventh, and drove on that

street almost every day going to school. On this occasion she came to a complete stop, shifted to low, looked to the left and saw no cars coming, then looked to the south and saw two cars two-thirds of a block away, in her judgment. She then proceeded to go ahead, used the foot accelerator and put the car in low gear. She recalls nothing more until she woke up in the operating room at the hospital.

On cross-examination she stated the damage to her automobile was to the right side; right front fender, right back fender, light, bumper and grill. Her church meeting started at 6:00 o'clock. She got in her automobile around six. She was running no later than usual for the meeting. When she came to the stop sign she saw the cars to her right on Atlanta Avenue a half to two-thirds of a block away. She was positive she had plenty of time to get across. The stop sign is about 21 feet from the intersection. She came to a dead stop, shifted from high to low and her speed as she started across couldn't have been over 10 or 15 miles. She heard Mr. Watkins testify and has no opinion as to whether she put the car in high gear. She has her glasses checked once a year and has no difficulty seeing at night. She has driven since 1927 and has had no other accidents.

On redirect examination she stated the photograph marked defendant's Exhibit "I" presents a fair and accurate representation of the damaged condition of her automobile.

Defendant introduced interrogatories propounded by her to plaintiff with his answers thereto. The substance of the testimony in the answers was that when he first saw Mrs. Allen he was in the intersection and she was approaching the intersection from Seventh Street and was near the intersection and when he saw her car he applied the brakes and swung to the right and defendant made a slight turn to the left.

By agreement of the parties the case was continued to December 7, 1950, and on that date plaintiff introduced in evidence the deposition of Mrs. Lora L. Bates. The tendency of the evidence in her answer to interrogatories propounded by plaintiff was to the effect that she is seventy-three years old and is now residing in Fresno, California, but she lived at 302 E. 7th Street, Sheffield, on November 27, 1949. She lived on the second floor of an apartment house and her apartment faced the south side of Seventh Street. She described the view from her apartment and said she could see plainly Seventh Street as it intersected with Atlanta Avenue.

She was at her window and saw the car almost to the intersection of Seventh and Atlanta and at the same time saw the other car going up Atlanta, that was all she could see before they hit. The car going east on Seventh Street did not stop at the stop sign.

Defendant was recalled to the stand in rebuttal and identified defendant's photographs "X" and "Y" as being fair and accurate representations of the intersection and the relation of the apartment house to the intersection.

Defendant then introduced a stipulation as to the testimony of Dan Glenn to the effect that he stepped off the distance from the center of the intersection of Atlanta Avenue and Seventh Street to the east side of the apartment house in which Mrs. Bates allegedly lived and in his judgment between the two points was 80 yards.

Appellant's counsel urges in brief that appellee is not entitled to recover in this case because under the evidence he was himself guilty of negligence which proximately contributed to his injury in failing to discover defendant in time to avoid the injury, and that by the exercise of reasonable care he could have done so.

The burden of proving contributory negligence is on defendant. Ala.Dig., Automobiles, ☞242(8).

Where local authorities designate a road or street as a thoroughfare by erecting stop signs at the entrances thereto from intersecting streets, the presumption arises that the stop signs were properly

and authoritatively placed at that point. Mobile City Lines v. Orr, 253 Ala. 528, 45 So.2d 766; Harris v. Blythe, 222 Ala. 48, 130 So. 548.

It is the duty of a motorist approaching on a street intersecting a right of way thoroughfare to yield to a motorist proceeding along the through street. Hawkins v. Barber, 231 Ala. 53, 163 So. 608; Osborn v. Grizzard, 251 Ala. 275, 37 So.2d 201.

Of course, the fact that plaintiff was entitled to the right of way would not relieve him of the general duty to operate his automobile with careful and prudent regard for the safety of others. Duke v. Gaines, 224 Ala. 519, 140 So. 600; Sandefer v. Robins, 35 Ala.App. 393, 48 So.2d 540.

But in exercising such duty, he had the right to assume that motorists approaching on the intersecting streets would obey the stop signs. Johnston v. Weissinger, 225 Ala. 425, 143 So. 464; Hammel Dry Goods Co. v. Hinton, 216 Ala. 127, 112 So. 638.

It is a familiar rule of law that when a civil case is tried by the court without a jury, the conclusion reached by the trial judge from the evidence given ore tenus has the effect of a jury verdict, and the judgment will not be set aside unless it is plainly and palpably contrary to the weight of the evidence. Hackett v. Cash, 196 Ala. 403, 72 So. 52; Benton Mercantile Co. v. Owensboro Wagon Co., 207 Ala. 49, 91 So. 784.

From a careful examination of the evidence, and after allowing all reasonable presumptions in favor of the trial court, we are of the opinion the evidence was sufficient to sustain the verdict.

Affirmed.

On Rehearing.

PRICE, Judge.

Counsel for defendant insists that in our opinion we "should have responded to appellant's assertion on original submission that Section 1 of the 1947 local act creating the Colbert Law and Equity Court which set the jurisdictional limit of said court at the sum of $3,000.00, as applied to prohibit this defendant from being heard in the trial court on the merits of her $35,-000.00 plea of recoupment for personal injuries and property damage sustained by defendant in the same accident from which she is there being sued, is in violation of Sections 10 and 13 of the Alabama Constitution of 1901 and therefore unconstitutional."

The insistence in the original brief is that said section is unconstitutional "if it can be said that appellee can successfully plead a judgment in this court in his favor in bar to the action of appellant against him in the Circuit Court of Colbert County, Alabama, arising from the same accident, and involving the same parties and subject matter."

This question is not before us for consideration. It is not our province to assume that such a plea will be filed nor to speculate as to its disposition in the event it is filed.

In deference to appellant's request we set out in full the stipulation of fact filed in the lower court on the motion to transfer the cause to the circuit court;

"The parties stipulate that the facts in regard to the Motion filed in this cause by Defendant on April 12th, 1950, and amendment thereto filed on May 2nd, 1950, are as follows:

"There is now pending in the Colbert Law and Equity Court a cause wherein T. R. Zickos is plaintiff and Mrs. J. R. Allen is defendant; that the summons and complaint in said cause was filed on the 21st day of December 1949, and a copy of said summons and complaint was served on the defendant on the 29th day of December, 1949.

"That there is now pending in the Circuit Court of Colbert County, Alabama, a cause wherein Salona Newton Allen, is the plaintiff, and T. R. Zickos is the defendant; that the summons and complaint in this

cause was filed on the 23rd day of December, 1949, and for reasons unknown to the defendant the sheriff did not serve the defendant T. R. Zickos with a copy of the summons and complaint in the cause in the Circuit Court until the 11th day of January, 1950; that both of said causes of action are now pending for trial; that there is involved in each of these cases the same parties and the same subject matter; that Mrs. J. R. Allen and Salona Newton Allen are one and the same person; that defendant has filed in the said cause pending in the Colbert Law & Equity Court a plea of recoupment claiming damages in excess of the sum of Three Thousand ($3,000.00) Dollars.

"The cause of action of plaintiff, Zickos, against the defendant, Allen, in this court is the alleged negligence of Allen at the time and place alleged in the complaint, and the cause of action of plaintiff, Allen, against the defendant, Zickos, in the Circuit Court is the alleged negligence of the defendant, Zickos, at the time and place alleged in the complaint, which is the same time and place, and the same accident and collision between the same automobiles as alleged in this case."

Application overruled.