**CHANDLER et ux. v. F. STRAUSS & SON et al.**

**No. 6062.**

Court of Appeal of Louisiana.
Second Circuit.

Dec. 1, 1939.

Rehearing Denied Jan. 5, 1940.

Writ of Certiorari and Review Denied
March 4, 1940.

Clark & Thompson, of Monroe, for appellants.

Heard & Heard, of Monroe, for appellees.

DREW, Judge.

The opinion of the lower court correctly sets out the issues involved in this case and has correctly determined the issue of liability. It reviews all of the testimony relating to the accident, and we know of nothing we could add to that part of the opinion. The awards made in the opinion are seriously contested here by both plaintiff and defendants, and we will discuss that part of the lower court's opinion.

The opinion is as follows:

"The plaintiffs, Julius Chandler and his wife, Mrs. Elnora Vallee Chandler, bring this suit against the defendants to recover damages alleged to have arisen by reason of a collision of a car operated by Julius Chandler with a truck owned by the defendant, F. Strauss & Son, and operated by the defendant, E. D. Bolin.

"The accident is alleged to have occurred at 1:10 P. M., on the 18th day of December, 1938, at the intersection of North Second and Washington Streets, in the City of Monroe, Louisiana. The plaintiff was traveling in a two-door Chevrolet sedan south of North Second street and the defendant, Bolin, was traveling east in the truck on Washington street.

"The plaintiffs allege that traffic in the intersection is controlled by semaphore light and his car entered therein when this light was green and that the defendant's truck entered on a red light. It is further alleged by plaintiffs that the defendant's truck was traveling at excessive speed and without proper lookout. The defendant admits the accident but denies any negligence on his part and alleges he entered the intersection on a green light and that plaintiff's car was traveling without a proper lookout and at excessive speed and reconvenes for damage to his truck.

"On trial of this case both plaintiff and defendant Bolin testified substantially in accordance with their respective pleadings and allegations. The evidence revealed that plaintiff's car was traveling south on North Second street and defendant's truck was

traveling east on Washington street. The plaintiff's car was driven by Julius Chandler, accompanied by his wife. The defendant, Bolin, an employee of F. Strauss & Son, was alone in the defendant's truck. Traffic is regulated by a semaphore light over the center of the intersection of said streets. The collision occurred a little east and south of the intersection, the front of the defendant's truck striking the plaintiff's car on the right side, slightly to the rear, causing the plaintiff's car to swerve completely around, without overturning, coming to rest facing in a northeast direction. Defendant's truck moved only a few inches fom the point of contact.

"The physical facts convince the Court that neither vehicle was traveling at excessive speed; otherwise, it would have been physically improbable for the plaintiff's car to have remained upright and practically improbable for the defendant's truck to have ceased its forward motion so near the point of contact. As aforesaid, both litigants claim the protection of the green light. On this point we have the evidence of a disinterested witness, a Mr. Ehrhardt, who testified, in substance, to the effect that at the time of the collision he was inside an office situated in the southeast corner of Washington and North Second streets; that the noise of the collision caused him to look out just as plaintiff's car came to rest; that he had an open view of the traffic light on North Second street; that he looked up and observed the light at this time to be amber or caution and that immediately thereafter the light changed to red. This evidence, coupled with the evidence of the physical facts, convinces this Court that plaintiff's car approached the intersection on the green light and that the caution signal appeared simultaneously with or immediately after his entry into the intersection. The physical facts further strongly indicate that plaintiff's car was the first to enter the intersection. His car was struck in the rear part and the place of contact was near the center of the intersection. These findings of fact convince the Court that plaintiff was without fault. It necessarily follows that defendant's truck must have approached the intersection on the red light and entered on either red or caution, and that he was, therefore, negligent and is liable for the consequences of his act.

"The damages alleged by Julius Chandler, itemized as medical and hospital bills, damages to his car and loss of wages by his wife, totally the sum of Three Hundred Fifty and 99/100 ($350.99) dollars, are substantially established by the evidence.

"The physical injuries suffered by the plaintiff, Mrs. Elnora Vallee Chandler, being principally a fractured rib, severe shock and general bruises, no doubt caused severe and excruciating pain for a time but the evidence does not indicate the possibility of any permanent injury or disability. Under the facts and circumstances, the sum of Seven Hundred ($700.00) dollars is adjudicated to be ample and sufficient compensation therefor.

"For the reasons above assigned, it is therefore ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Julius Chandler, and against the defendants, F. Strauss & Son, D. B. Bolin and United Employees Casualty Company, in solido, in the sum of Three Hundred Fifty and 99/100 ($350.99) Dollars, with legal interest thereon from judicial demand until paid.

"It is further ordered, adjudged and decreed that there be judgment in favor of Mrs. Elnora Vallee Chandler and against said defendants, in solido, in the sum of Seven Hundred Dollars, with legal interest thereon from judicial demand until paid.

"It is further ordered that defendants pay all costs of this suit, including fees of medical experts not to exceed Twenty-five ($25.00) Dollars each.

"Thus done, read and signed this 29th day of June, A. D., 1939.

"R. R. Reeves,
"Judge."

Julius Chandler, as head and master of the community, prayed for damages in the sum of $115 for hospital, X-ray and doctors' bills. This amount was proved and awarded to him. The judgment in that respect is correct.

He also prayed for judgment for $108.49 for repairs to his car, and was awarded judgment in that amount which, it is not denied and is proved, was the actual price charged for repairing the car after the accident. He carried insurance to cover this item of damage, the policy containing a $50 deductible clause. The result was that Julius Chandler paid only $50 and his insurer paid the balance. Defendants contend that they are not liable to Mr. Chandler for anything more than the $50 paid by him. There is no merit to this conten-

tion. They are liable for all damage caused by the collision and are not concerned with the settlement between Mr. Chandler and his insurer. Ayres v. Wyatt et al., La. App., 185 So. 84. The award made by the lower court on this item is correct.

■ The last item of damage awarded to Mr. Chandler is $127.50 for loss of wages by his wife, consisting of seventeen days at $7.50 per day. The record makes it clear that Mrs. Chandler lost, on account of her injuries, at least seventeen days from her work, and that she was employed by the National Youth Administration of the United States Government, at a salary of $225 per month, which is the equivalent of $7.50 per day. There is no dispute over this fact. But because the government paid her for the seventeen days, defendants contend that she lost nothing on account of her inability to work. The facts are, however, that she has lost.

An administrative official of the government is entitled to one and one-fourth days per month sick leave and annual leave. It is optional with the official as to when he or she will take this annual leave. In the case of Mrs. Chandler, she had allowed her leaves of absence to accumulate until at the time of the accident she had sufficient accumulated time coming to her to carry her over the seventeen days. However, if she should have become ill after this time, her sick leave would have been used up and she would have had to suffer the loss of salary. Also, if she does not become sick, her spring vacation which she intended taking on the accumulated leaves of absence she had, will be, if at all, on her own time without pay. The defendants are without right to have credit for the accumulated time she had acquired by depriving herself of the leaves of absence allowed her at regular intervals. We find no error in the judgment allowing her husband to recover for the loss of time occasioned by her injuries.

The last item of award is complained of by both plaintiff and defendants. Plaintiff thinks it insufficient and defendants claim that it is excessive. This item is the award of $700 to Mrs. Chandler, for pain, suffering and physical injuries. There is no dispute between the physicians as to what her condition was after the accident, and is now. The doctor who treated her described her injuries and condition as follows:

"A. Yes, sir, I looked at Mrs. Chandler on December 18th, 1938; shortly following an automobile accident, about 1:00 P. M., I was called at my residence and asked to meet her down at my office. I rushed right down there and she was brought there by some gentleman, I don't know his name. I know him when I see him. When I first saw Mrs. Chandler she was pretty well shocked and complained of pain in her neck, chest and back and left knee and I took her in the office and examined her and decided the best thing to do was to admit her to the hospital, and I admitted her to St. Francis Sanitarium and I went over and found that she had suffered bruises to the right hip, which was manifested by an enlarged discolored area and she was given a hypodermic of morphine for pain and shock. After I checked her over carefully, I had X-rays made of her chest and right hip and found that she had a fractured rib on the right side; the ninth rib in the scapular line; that is the shoulder blade line. A complete diagnosis of the case was a contused right hip, a sprained back, a wrenched neck and a contused left knee, and I kept Mrs. Chandler in the hospital, I think, from the 18th of December until she was discharged on the 23rd of December. During her period in the hospital the treatment consisted of strapping her chest and leaving it—we would strap it and leave it on for two or three days and then take it off and restrap it, and applied heat to the chest; diatherma, and sedatives for pain, and after her discharge from the hospital on the 23rd—December 23rd—she remained at home until, I believe it was about January 6th or 7th—I believe it was January 7th, and the treatment then consisted of chest strapping and heat to her hip, chest and knee and sedatives for pain. After the 6th of January Mrs. Chandler was permitted to report to her office for a period of two or three hours daily to supervise her work. On my last examination, which was Saturday, Mrs. Chandler— * * * Mrs. Chandler was complaining of slight pain occasionally on the right side of her chest, posteriorly; no back complaint nor pain in the neck and no pain in the knee. In other words, she is well, except for just an occasional pain in the chest. There is no permanent disability following the accident.

"Q. Dr. Guerriero, would you say that she experienced a great deal of pain? A. Yes, sir; she suffered shock and pain. That is the reason we kept her in the hospital so long; we gave her sedatives for pain and severe shock.

136

"Q. How long did you give her sedatives? A. Off and on for sixteen or seventeen days. Not every few minutes, but as she needed it; sometimes once a day or maybe twice a day, and every other day, as she needed it. Of course, it wasn't always in the form of hypodermic. At first in the form of hypodermic and later in the form of codeine capsule.

"Q. Did she have any other bruises other than these places you have mentioned? A. No indication except the blue spot on the right hip and the abrasion and blue spot on the left knee and I don't recall any other blue spots; I am not positive whether there was one on the right chest or not. I don't believe there was.

"Q. How long after this injury, and after the accident, would you estimate that she was unable to drive a car and do other things that she would ordinarily do? A. Usual duties?

"Q. Usual duties. A. I imagine along about the first week in February. I think she was disabled about six or seven weeks."

Although we have been cited to cases showing both larger and smaller awards for injuries somewhat similar to those received by Mrs. Chandler, it is common knowledge that no two cases are exactly alike as to injuries or suffering. There are times when the disposition and temperament of one person will cause greater suffering than for another person with like injuries but with a different disposition and temperament. Also, the physical condition prior to the injury often has a great deal to do with the suffering and time required for recovery. So, after all is said, each case must be governed as to the amount of the award by the facts and conditions peculiar to that particular case. We are of the opinion the award to Mrs. Chandler in this case is a just and fair award and we will not disturb it.

In the lower court defendants filed an exception of no cause or right of action. It was not tried there and is not stressed here. We have, however, looked into its merits and find it is without merit.

In the opinion and judgment of the lower court there is a typographical error in the name of the insurer, which was cast in judgment. The judgment names this defendant as "United Employees Casualty Company", when it should be "United Employers Casualty Company". The judgment of the lower court is therefore amended by correcting the name of the defendant insurer, and as amended, it is affirmed with costs.