An automobile collision which occurred in the early morning of September 1, 1945 in the town of Amite, gave rise to this proceeding.
The defendant who is a Louisiana negro living in the city of Chicago was driving his automobile on a trip from that city to Port Allen, Louisiana, where some of his family reside. He was following highway No. 51 which passes through Amite. That highway runs north and south, but on reaching the town of Amite it runs into Chestnut Street which runs east and west, and a driver following it has to make an, off-set which is one block long on Chestnut Street. The defendant Ernest Martin was making this off-set and had reached the intersection of Chestnut Street and the highway and making his turn in order to head south when the plaintiff's automobile which was coming north collided with his car and the damage to both cars resulted.
Apparently without taking the trouble to make much investigation about who the defendant was, except to examine the license plate on his car, the plaintiff filed a suit for damages under which he obtained an order and writ of attachment and the car which was then in the O.K. Garage in Amite, was seized. Service on the defendant was made through the office of the Secretary of State.
Suit was filed on September 5th, four days after the accident and the defendant having made no appearance, judgment by default was obtained against him on October 19, 1945 for the sum of $124.85 with maintenance of the writ of attachment and an order for the sale of the car in order to satisfy the judgment. *Page 399 
On November 15, 1945 the defendant appeared in the district court for the first time in a petition addressed to that court in which he alleged that he had no knowledge of any suit having been instituted against him until November 10, 1945 at which time he at once engaged the services of an attorney to protect his interest. He alleges further that he was not indebted to the plaintiff for any part of the sum for which judgment had been obtained against him and his property attached; that he had a legal and equitable defense to the suit brought against him and that the filing of that suit and the obtaining of judgment were gross, fraudulent acts on the part of the plaintiff, done wth the fraudulent purpose of obtaining a sum of money when he well knew that he had no legal claim whatever to it and that therefore the judgment obtained against him under which his car was attached is null and void.
He then charges plaintiff with gross negligence which, he avers, caused the accident and resulting damage to his automobile in the sum of $175.50, which, with certain expenses incidental to its repair and loss of its use, he should recover judgment for against him.
On his application, the court issued a rule nisi against the plaintiff Messina ordering him to show cause why a preliminary injunction should not be granted staying all proceedings pending and judgment rendered in his favor with damages in the sum of $407.50.
This rule was made returnable on November 20, 1945, on which day an answer was filed by Messina and shortly thereafter he filed an exception of no cause and no right of action. There seems to have been no ruling made in the lower court on this exception which we understand to have been aimed at the form of proceeding instituted by the defendant, and as nothing is done or said about it on this appeal we take it that counsel for plaintiff does not question the regularity of the proceedings and relies solely on his defense on the merits.
The rule for a preliminary injunction was tried first and after trial the district court rendered judgment granting the same. Plaintiff's attorney then suggested to the court that the original petition of plaintiff in the suit as well as his answer to the rule be both taken as an answer to the merits and on these pleadings the case was then tried on the merits and resulted in a judgment nullifying the original judgment rendered on October 19, 1945 and permanently enjoining the plaintiff from proceeding further under the writ of attachment. The judgment also awarded the defendant the sum of $175.50 for the damage to his automobile but rejected the other items which he had claimed amounting to $232. From this last judgment plaintiff has taken this appeal.
The defendant has answered the appeal asking that the judgment be increased to the sum of $407.50. Plaintiff has filed in this court a motion to remand the case to the lower court for the purpose of having the judgment reduced. This motion is based on an averment supported by an affidavit signed by a man named Lessard to the effect that the defendant has recovered collision insurance from his insurance carrier in the sum of $125.50.
The undue haste with which plaintiff acted in filing suit against this defendant and his manner of obtaining service of process on him impress us at the start, with the weakness of his case. He apparently sought no information regarding defendant's name or his residence, at the moment of the accident, and relied exclusively on the license plate of his automobile to ascertain that he was a non-resident and lived in the State of Illinois. There is no basis whatever on which to predicate the alias "Ernest Bomicino" which is given him in the petition.
[1] In order to verify defendant's residence plaintiff's attorney wrote to the Secretary of State of Illinois, who, as appears from a card addressed by him on September 18, 1945, informed him that the license was properly issued to the defendant and moreover gave him the defendant's correct street and number address in the city of Chicago. There is no doubt but that under the circumstances, service through the Secretary of State was proper according to the provisions of Act 86 of *Page 400 
1928 as amended by Act 184 of 1932 although under Act 215 of 1920 in which a plaintiff proceeds as did the plaintiff in this suit, to obtain an order of attachment, service of process might have been made through a curator ad hoc. We may well assume however that service through the Secretary of State's office was proper and yet it looks to us as though more might have been done to communicate with this defendant than was done in this case. True it is that a citation addressed to a non-resident of the State of Illinois does not mean very much to the Secretary of State as it would be very difficult to know how to begin to locate an individual so cited, still, when within a few days after the filing of the suit the individual's correct address is ascertained, as it was by the attorney for the plaintiff, it strikes us that there is a moral duty at least, on the part of some one to give that information to the office of the Secretary of State to the end that an attempt may be made to communicate with the party at that address. Nothing like that seems to have been done in this case and it was not very long after the delays, involving the distance such as it was, had expired, that a judgment by default was taken and later confirmed against the defendant.
[2] Moreover it is shown that defendant's automobile which had been damaged, was towed to the garage of a man who was appointed by the Sheriff as keeper and who also testified in the case as one of plaintiff's witnesses. It is also shown by the testimony of this very witness that defendant came to his garage on several occasions after the seizure to get some information as to the progress he was making in repairing the car and at no time, according to the defendant did he tell him that his car was under seizure until November 10, 1945 more than three weeks after judgment had been obtained maintaining the attachment. True it is that this garage man testified that he "thinks" he had informed the defendant of the seizure before that day but his testimony is so vague and indefinite that it was properly rejected by the district judge. If, when the defendant was informed on November 10, 1945, as he says he was, for the first time, he rushed to an attorney's office to have his rights investigated, would it not be reasonable to assume that he would have taken that same step on any prior notice he had had that his car had been seized? He appears to have been so surprised upon getting this information on November 10, 1945 that we are satisfied this was the first time he received it and again we believe the district judge was correct when in effect he so held by granting the preliminary injunction and later nullifying the judgment which he had rendered on the service which had been obtained against him.
This brings us now to a consideration of the case on the merits which resolves itself, after all, into a suit by the plaintiff against the defendant on the main demand and a reconventional demand by the defendant with each party claiming damages as a result of the negligence of the other.
The point of impact between the two cars undoubtedly indicates that the defendant had already crossed the center stripe in highway No. 51 and was ready to make his turn in the intersection to head south when his car was run into by that of the plaintiff. The only disinterested witness, Mr. Harry Johnson who is a member of the Legislature from Tangipahoa Parish, shows that defendant was not driving his car at a greater speed than from 10 to 15 miles per hour as he entered the intersection, as he seemed to want to make certain that he was entering the proper highway. Plaintiff on the other hand seems to have been confused when he saw the defendant's car about to make this turn and instead of holding to his right hand side of the highway going north, in which event he easily could have avoided a collision, appears to have lost control of his car, ran on to the shoulder on his left and then in trying to right himself, ran into the defendant's car. Counsel urges that he had preempted the intersection by entering it ahead of the defendant, but as pointed out by counsel for defendant, plaintiff by his own testimony contradicted this for he testified that he was almost 125 feet from the intersection when he saw the defendant's car either entering or crossing over it. An attempt was made to show that the point of collision was not *Page 401 
on the west side of the intersection but again the physical facts conclusively show that it was, for according to the testimony of Mr. Johnson and that of the City Marshall of Amite, Mr. B.B. Schilling, the mud from the fenders of the defendant's car was all found on that side and the relative positions of the two cars after they came to a stop leave but little doubt of that fact.
[3, 4] We conclude therefore that under the testimony, the district judge was correct in awarding judgment in favor of the defendant for the damage to his automobile. The other items claimed by him and which were disallowed are of a rather speculative nature and there isn't sufficient proof to support them.
[5] As for the motion of the plaintiff to remand the case for reduction of the judgment, we are unable to understand on what legal authority it is based. Let us say that the insurance company did pay the defendant $124.25 under a policy which he held, there is no reason why Messina should profit from that payment. If he finally is made to pay and the insurance company would make a demand on the defendant to reimburse it for what it has paid, that would be a matter between the insurance company and the defendant with which Messina could not possibly be concerned. If he has a liability, as has been decreed in the judgment against him, all that he is called on to do is to pay the amount and he becomes relieved of any further obligation. We can see no merit in the motion and it is therefore overruled.
Judgment affirmed at the costs of plaintiff, appellant herein. *Page 433