**Robert C. CUDD**

v.

**GREAT AMERICAN INSURANCE COMPANY.**

**Civ. A. No. 8038.**

United States District Court
W. D. Louisiana,
Monroe Division.

Feb. 21, 1962.

238

George M. Snellings, Jr., McHenry, Snellings, Breard & Sartor, Monroe, La., for plaintiff.

W. D. Cotton, Cotton & Bolton, Rayville, La., Nathan M. Calhoun, Falkenheiner & Calhoun, Dale, Richardson & Dale, Vidalia, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

Plaintiff brought this damage action for personal injuries sustained in a highway accident which occurred on the night of December 4, 1959, on a road in Concordia Parish. At the time, he was riding as a passenger in an automobile owned by Monroe Machinery Company and driven by Paul Dykes. The car collided with a truck stopped partly on the highway and owned by Atchley Electric Service of Ferriday, Louisiana. Defendant, Great American Insurance Company, was the public liability insurer of the truck. It was sued directly and alone under the Louisiana Direct Action statute, LSA–R.S. 22:655.

The case was tried to a jury which returned a verdict for plaintiff in the sum of $16,462.90. Against the amount of this verdict, defendant now seeks to have credited the sum of $5,250, which was received by plaintiff in return for his execution of a "Covenant Not to Sue and Limited and Restricted Release" in favor of Marquette Casualty Company, the public liability insurer of the automobile in which plaintiff was riding, Monroe Machinery Company, its owner, and Paul Dykes, the driver. The instrument contained an express reservation of rights against Atchley Electric Service, P. R. McSwain, and Great American Insurance Company.

Simply put, the issue is: Where several persons are involved in an automobile accident which gives rise to a cause of action in tort, is payment made to the injured party (plaintiff in the action) in return for a so-called "Covenant Not to Sue and Limited and Restricted Release" in favor of an alleged tortfeasor (and his insurer) not made a par-

ty to the suit, to be credited against the amount of recovery awarded in the jury's verdict where, upon insistence of counsel for plaintiff, evidence of the settlement was withheld from the jury?

We have considered carefully the respective briefs, and authorities cited, and have conducted extensive independent research. Our conclusion is that the jury's verdict should be reduced by $5,250, the amount of the settlement, thereby leaving a balance of $11,212.90 for which judgment will be rendered. Although the facts are not in dispute, there is substantial disagreement as to the law. We will proceed, therefore, to a detailed consideration of the problem, fully canvassing the authorities.

In Chandler v. F. Strauss & Son, 194 So. 133 (2nd Cir., LaApp., 1939), an injured plaintiff was partially indemnified by *his own insurer* pursuant to the terms of a collision insurance policy containing a $50 deductible clause. There the Court refused to allow a credit against the judgment, reasoning that the tort-feasor was not concerned with, and therefore could not benefit from, the settlement between the injured plaintiff and his own insurer. Similar results were reached in Messina v. Bomicino, 27 So.2d 397 (1st Cir., La. App., 1946), and Alpaugh v. Krajcer, 57 So.2d 700 (Orleans La.App., 1952), cert. den., June 2, 1952, the distinction between those cases and this one being that there each plaintiff received indemnity from his own insurer and not from a joint tort-feasor or the latter's insurer. In other words, the plaintiff there received payment pursuant to a contractual obligation as to which the defendant tort-feasor had no interest. In accord is Consolidated Freightways v. Moore, 38 Wash.2d 427, 229 P.2d 882 (1951). Likewise, credits have been denied for payments made pursuant to medical payments clauses in liability policies even though the loss is partially or wholly made good by the other insurer. De Roode v. Jahncke Service, Inc., 52 So.2d 736 (Orleans La.App., 1951); Duree v. State, 96 So.2d 854 (1st Cir., La.App., 1957); Distefano v. Delta Fire & Cas. Co., 98 So.2d 310 (1st Cir., La.App., 1957); Warren v. Fidelity Mutual Ins. Co., 99 So.2d 382 (1st Cir., La.App. 1957); Dumas v. United States Fidelity & Guaranty Co., 125 So.2d 12 (3rd Cir., La.App., 1960); and, contra, Hawayek v. Simmons, 91 So.2d 49, 61 A.L.R.2d 1254 (Orleans La.App., 1956). Similar results have obtained in cases of workmen's compensation payments made to the injured plaintiff; there the tort-feasor is liable for the full amount of damages suffered and has no interest in how the proceeds of the judgment are distributed. See, e. g., United Gas Corp. v. Guillory, 207 F.2d 308 (5th Cir., 1953).

These principles also prevail in the majority of other jurisdictions, the controlling factor being that there is no logical or legal reason why a wrongdoer should receive the benefit of insurance obtained by the injured party for his own protection. It is a collateral contractual arrangement which has no bearing upon the extent of liability of the wrongdoer. Siebrand v. Gossnell, 234 F.2d 81 (9th Cir., 1956); Taylor v. Jennison, 335 S.W. 2d 902 (Ky., 1960); Leon v. United States, 193 F.Supp. 8 (E.D.N.Y., 1961); 15 Am.Jur., Damages, Sec. 201, p. 617; 25 C.J.S. Damages § 99, p. 647; 13 A.L.R. 2d 355 and the 1960 A.L.R. Supplemental Service for additional cases. In accord are Davis v. Kansas Electric Power Co., 159 Kan. 97, 152 P.2d 806 (1944); Finley P. Smith, Inc. v. Schectman, 132 So.2d 460 (Fla.App., 1961); Wells v. Thomas Garland, Inc., 39 S.W.2d 409 (Mo.App., 1931); Allen v. Zickos, 37 Ala.App. 361, 68 So.2d 841 (1953); Monsanto Chemical Co. v. American Bitumuls Co., 249 S.W. 2d 428 (Mo.Sup.Ct., 1952); Ward v. Mitchell, 216 Miss. 379, 62 So.2d 388 (1953); Overland Const. Co. v. Sydnor, 70 F.2d 338 (6th Cir., 1934); Donohue v. Acme Heating, etc., 214 Minn. 424, 8 N.W.2d 618 (1943); Moultroup v. Gorham, 113 Vt. 317, 34 A.2d 96 (1943); and Powers v. Ellis, 231 Ind. 273, 108 N.E.2d 132 (1952). The minority position is stated in Sedlock v. Trosper, 307 Ky. 369, 211 S.W.2d 147, 13 A.L.R.2d 349, and Mink v. Majors, 39 Tenn.App.

50, 279 S.W.2d 714 (1954), but the soundness of its reasoning was questioned in Taylor v. Jennison, supra.

■ Another rule prevails, however, where the injured plaintiff obtains judgment against one joint tort-feasor after having received partial indemnity for the loss from a settlement or release granted to a second joint tort-feasor or his insurer. Here, the injured party's judgment properly is reduced by the amount he received in settlement from the other tortfeasor. This result is consistent with the fundamental principle of the law of damages that one injured by wrongful or negligent acts or omissions shall have fair and just compensation commensurate with the loss sustained in consequence of the defendant's act, so as adequately to pay him for the injury sustained. Which is to say, the injured party is entitled to recover full indemnity for his loss, and to be placed as nearly as possible in the condition which he would have occupied had he not suffered the injury complained of in the action. However, the law should not put him in a *better* position than he would have been had the wrong not been done, or, stated another way: he should receive adequate compensation, *but no more.*

This is the rule adopted by the Uniform Contribution Among Joint Tort-Feasors Act, see Pa.Stat.Ann., Title 12, §§ 2085, 2086 (Purdon, 1958 Supp.), and Pilosky v. Dougherty, 179 F.Supp. 148 (E.D.Pa., 1959), and followed by a majority of courts.

In Mayle v. Criss, 169 F.Supp. 58 (W. D.Penn., 1958), the Court held that, notwithstanding the third-party defendant's immunity from judgment, but *recognizing that an injured party can make but one recovery and invoking principles of equity,* the amount paid to secure a release should enure to the benefit of the defendant tort-feasor *with or without a finding that the other alleged wrongdoer was also a joint tort-feasor.* Gelsmine v. Vignale, 11 N.J.Super. 481, 78 A.2d 602 (1951). Again, we emphasize that this result is consistent with the theory of adequate compensation and indemnity.

Stating that double recovery is not permitted in California or elsewhere, the Court in Reinach v. City & County of San Francisco, 164 Cal.App.2d 763, 331 P.2d 1006 (1958), applied this principle in the absence of a controlling statute. See, also, to the same effect, Section 885, Restatement of the Law of Torts; Reeder v. Hoag, 158 Cal.App.2d 41, 321 P.2d 793 (1958); Skyline Cab Co. v. Bradley, 325 S.W.2d 176 (Tex.Civ.App., 1959); Daniels v. Celeste, 303 Mass. 148, 21 N.E.2d 1, 128 A.L.R. 682 (1939); Karcher v. Burbank, 303 Mass. 303, 21 N.E.2d 542, 124 A.L.R. 1292 (1939); Beck v. Bel Air Properties, 134 Cal.App.2d 834, 286 P.2d 503 (1955); Pacific States Lumber Co. v. Bargar, 10 F.2d 335 (9th Cir., 1926); Aldridge v. Morris, 337 Ill.App. 369, 86 N.E.2d 143 (1949), (where credit was allowed for the amount received from persons whose tort liability arose out of the same circumstances, irrespective of whether the covenantee was made a party to the suit, thereby assuring single recovery for damages sustained); New York, C. & St. L. R. R. Co., v. American Transit Lines, Inc., 408 Ill. 336, 97 N.E. 2d 264 (1951); Insuranshares Corporation of Delaware v. Northern Fiscal Corp., 42 F.Supp. 126 (E.D.Penn., 1941); Young v. Anderson, 33 Idaho 522, 196 P. 193, 50 A.L.R. 1056 (1921), (where credit was allowed notwithstanding the fact that the covenantee was not found to be a joint tort-feasor).

Mitigation of damages has been held allowable where the relationship of joint tort-feasors has not been judicially established. For the identical rule in jurisdictions not referred to above, see the annotation and comprehensive review setting forth the theory of indemnity and single recovery in 104 A.L.R. at page 931, and A.L.R. Blue Book, Supplemental Decisions, First Permanent Volume, and the explanation of the majority rule in McWhirter v. Otis Elevator Co., 40 F. Supp. 11 (W.D.S.C., 1941).

Turning to the Louisiana jurisprudence, the most recent application of this

rule is found in Peats v. Martin, 133 So. 2d 920 (2nd Cir., La.App., 1961), where the Court, after stating that the alleged joint tort-feasor who settled with plaintiff could not be adjudged liable or negligent in the absence of being sued as a party defendant in the action, affirmed the lower Court's judgment which credited the sum received by plaintiff in settlement against the judgment in her favor. Thus, the Court did not deem it necessary to adjudge the alleged tort-feasor making the settlement to be in fact a joint tort-feasor in order to allow credit against the ultimate judgment in plaintiff's favor. The Court, thereafter, and without lengthy discussion, affirmed the award of a single recovery for the injury, and thereby held consistently with the theory of indemnity and compensation damages, i. e., the awarding of fair and adequate recovery for the loss sustained, but no more.

In State Farm Mutual Automobile Ins. Co. v. Bourne, 220 F.2d 921 (5th Cir., 1955), the District Court did not admit proof of plaintiff's settlement in evidence before the jury. Rather, the issue of the plaintiff's entire damage was submitted to the jury and, subsequently, the Judge, upon the jury's findings, made the proper deduction from the verdict. The Fifth Circuit Court of Appeals affirmed, and quoted with approval from appellees' brief, saying:

"' * * * We can say positively when the former method (the Judge making the deduction) is employed, that the jury has brought in a verdict in an amount which they believe will *adequately and justly compensate the plaintiff*, that the proper deduction has been made because the Judge himself in the judgment makes the proper deduction.' " 220 F.2d 923 (Emphasis added.)

Out of the presence of the jury, counsel for plaintiff here strenuously and successfully objected to the introduction by defendant of evidence as to plaintiff's having made a settlement or the amount he received. Therefore, the jury, in assessing damages for this injury, did not know about the $5,250 payment made to plaintiff and, presumably, had it possessed such knowledge, its verdict would have been reduced *pro tanto*. Again, it is emphasized that an injured party should receive full indemnity for his loss, but no more. Here, the jury determined plaintiff's entire damage to be in the sum of $16,462.90. For this reason, to do full justice, we believe we must deduct from the jury's verdict the amount already received by plaintiff which constituted partial indemnity for the injuries found by the jury to have been sustained.

In another Louisiana case, Lewis v. Travelers Indemnity Co., 81 So.2d 178 (2nd Cir., La.App., 1955), the foregoing method of calculation was approved and was characterized as being consistent with the provisions of La.Civil Code Article 2203, which reads, in part:

"* * * The remission or conventional discharge in favor of one of the codebtors *in solido*, discharges all the others, unless the creditor has expressly reserved his right against the latter.

"In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission."

There, as in Peats, supra, the Court did not judicially determine the joint or solidary liability of the alleged tort-feasor who made the payment to the injured plaintiff. It is noted in Lewis, however, that the Court's discussion of this issue was not germane to its ultimate decision on appeal. However, assuming that a determination of solidary liability is necessary in order for plaintiff successfully to invoke the provisions of La.Civil Code Article 2203, the fact remains that, under La.Civil Code Article 2315, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it * * *," or, put another way, it obligates the wrongdoer to indemnify the damaged party and to put him, through payment of money dam-

ages, as nearly as possible in his original status.

Closely related to this rule, is the moral axiom that no one ought to enrich himself at the expense of another. La.Civil Code Article 1965. See Atkins, "The Impact of the Growth of Enterprise Liability on the Theory of Damages in Accident Cases," 20 La.Law Review 50. By adopting the Court's approach in Mayle v. Criss, 169 F.Supp. 58 (W.D.Pa., 1958), which recognized that an injured party should make but one recovery, and invoking principles of equity, the amount paid in settlement will enure to the benefit of the defendant tort-feasor with or without a specific finding that the other party to the accident also was a joint tort-feasor. Louisiana District as well as Appellate courts have allowed credits for amounts paid an injured party in settlement in cases similar to this one. See Middleton v. Rheem Mfg. Co., 34 So.2d 271 (Orleans La.App., 1948), cert. den. April 26, 1948, and Brousseau v. Rheem Mfg. Co., 34 So.2d 273 (Orleans La.App., 1948), cert. den. April 26, 1948, where untimely pleading precluded consideration of the issue on appeal.

In Landry v. New Orleans Public Service, Inc., 177 La. 105, 147 So. 698 (1933), the Court remanded for consideration to the Court of Appeal, Orleans, the issue of whether a payment made by an alleged joint tort-feasor's insurer to the plaintiff in settlement should be credited against a judgment in the latter's favor. The Court of Appeal, on remand, 149 So. 136, interpreted the Supreme Court's instructions as directing that, in the event the defendant and the party to the accident whose insurer made the payment to plaintiff in settlement were found to be joint tort-feasors in fact and therefore liable *in solido* to plaintiff, the amount paid in settlement should be credited against any judgment in plaintiff's favor. The credit was therefore allowed by the Court of Appeal. Later, in a concurring opinion in Rice v. Traders & General Ins. Co., 114 So.2d 92 (1st Cir., La.App., 1959), Judge Tate explained the conclu-

sion in Landry as resulting from the "unusual release and subrogation agreement involved." 114 So.2d at 97.

It is significant, however, that the Court of Appeal did not ground its conclusion on its own independent interpretation of the release agreement, but, on the contrary, allowed the credit pursuant to the instructions—as it interpreted them—from the Supreme Court as set forth in that Court's opinion at 147 So. 701. The Supreme Court's instructions, as reported, however, did not direct that the credit be allowed. Rather, the Supreme Court remanded for the purpose of the Court of Appeal making the joint tort-feasor determination whereupon the Court would then determine " * * * *whether the judgment* rendered against either or both of the defendants *should be credited* with the $2,500 paid the relator Landry (plaintiff) by the insurance company." 147 So. at 701. (Emphasis added.)

In Judge Tate's concurring opinion in Rice, supra, he points out that the party making the payment to the injured plaintiff is a "stranger" to the proceeding and that " * * * in the last analysis such payments made by third persons are not actually paid to satisfy any damages." 114 So.2d at 96. The fact remains, however, that the payment here was made, as expressed in the "Covenant Not to Sue and Limited and Restricted Release," in consequence of the accident giving rise to the injuries for which the action is brought, and although in form the payment was not made to satisfy damages, in substance and in cold reality, it partially indemnified plaintiff for his loss and, therefore, should be deducted from the judgment in order to limit plaintiff's recovery to fair and adequate compensation for his loss.

The only Louisiana decision which is in apparent conflict with our conclusions here is Johnson v. Whitfield, 89 So.2d 413 (1st Cir., La.App., 1956), where the Court in denying the credit, reasoned that the payment was made specifically as a result of a contract which did not in-

clude any payment of the defendant's liability for damages to the plaintiff. The Johnson decision is followed, however, by a contrary decision of that same Court in Vidrine v. Southern Farm Bureau Cas. Co., 105 So.2d 279 (1st Cir., La.App. 1958), where the Court, without passing on the joint tort-feasor aspect, approved the lower Court's judgment which credited the sum received by the plaintiff in settlement of his claim against the other party to the accident and his insurer (neither of whom was before the Court as a party defendant) against the amount to be recovered from the defendant. The persuasiveness of the Johnson decision is, therefore, questionable, and we adopt the position of the Court in Vidrine as the later and better view.

■ Although plaintiff asserts that defendant has waived its claim for credit through untimely pleading, it is recalled, as noted above, that during pretrial conference all counsel agreed and understood that evidence relative to the payment upon which this claim is based would be withheld from the jury, and that the Court would reserve judgment on the validity of the claim for credit pending the verdict. Plaintiff's argument is, therefore, unavailing.

■ Defendant's motions for a directed verdict, judgment *non obstante veredicto,* and, alternatively, for a new trial, have been carefully considered, the Court having studied the respective briefs, and authorities cited, and recalling clearly the testimony at the trial. On the question of liability, it is our view that a jury question was presented, and we must consider the evidence from the standpoint most favorable to plaintiff. We find that there was substantial evidence supporting the jury's verdict.

For these reasons, the motions for a directed verdict, upon which we reserved judgment, the motion for judgment n. o. v., and the motion for a new trial must be, and are hereby, denied.

A proper decree should be presented on notice.