611 So.2d 322 (1992)
Ex parte Samuel M. BOYKIN, Jr., and Apon, Inc.
(Re Samuel M. BOYKIN, Jr., and Apon, Inc. v. ARTHUR ANDERSEN & COMPANY, et al.)
Ex parte BIRMINGHAM EDUCATION ASSOCIATION, an unincorporated association, on behalf of itself and its members, et al.
(Re BIRMINGHAM EDUCATION ASSOCIATION, et al. v. BIRMINGHAM BOARD OF EDUCATION, et al.)
No. 1911630, 1911693.
Supreme Court of Alabama.
December 4, 1992.
*323 Andrew P. Campbell, Eddie Leitman and Shawn Hill Crook of Leitman, Siegel, Payne & Campbell, P.C., Birmingham, for Samuel Boykin, Jr., Apon, Inc. and the plaintiff Class.
Joe R. Whatley, Jr., Andrew C. Allen and Samuel H. Heldman of Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, for Birmingham Educ. Ass'n, et al.
Asa Rountree, James L. Goyer III and Jeffrey McLaughlin of Maynard, Cooper, Frierson & Gale, P.C., Birmingham, for Arthur Andersen & Co.
Gaile Pugh Gratton and J. Franklin Ozment of Lange, Simpson, Robinson & Somerville, Birmingham, for Birmingham Bd. of Educ.
James S. Christie, Jr., of Bradley, Arant, Rose & White, Birmingham, for Judge Stuart Leach.
Maibeth J. Porter and Jeffrey R. McLaughlin of Maynard, Cooper, Frierson & Gale, P.C., Birmingham, for Protective Life Ins. Co.
Ray O. Noojin, Jr., Birmingham, for amicus curiae Birmingham Bar Ass'n.
Demetrius C. Newton, City Atty., Birmingham, for amicus curiae City of Birmingham.
Kenneth L. Thomas of Thomas, Means & Gillis, P.C., Montgomery, as amicus curiae in support of petitioners.
PER CURIAM.
These petitions for writs of mandamus ask this question: Is the assignment or transfer, pursuant to Administrative Order No. GO-92-1, of civil cases filed in the Birmingham Division of the Circuit Court of Jefferson County, to the "equity division" of that circuit, authorized under Alabama law?
Samuel Boykin and Apon, Inc. ("Boykin"), petition this Court for a writ of mandamus directing the Honorable Arthur J. Hanes, Jr., of the Circuit Court of Jefferson County, to vacate his order of July 8, 1992, which transferred their action against Arthur Andersen & Company, et al. ("Andersen"), to the equity division of the Tenth Judicial Circuit. We grant the writ.
The Birmingham Education Association, et al. ("BEA"), petitions this Court for a writ of mandamus directing the Honorable Jack Carl or the Honorable Roger Monroe, of the Circuit Court of Jefferson County, or the Honorable Stuart Leach, Presiding Judge of the Tenth Judicial Circuit, to vacate Judge Monroe's undated order transferring its action against the Birmingham *324 Board of Education, et al. ("BBE"), to the equity division of the Tenth Judicial Circuit. We grant the writ.
The issue behind these petitions is whether the creation and maintenance of a separate equity division within the Tenth Judicial Circuit, the Jefferson County Circuit Court at Birmingham, to which cases involving some historically equitable matters are transferred, is authorized under the present law of Alabama. Because the creation and maintenance of the equity division is not authorized by Alabama law, the writs of mandamus are granted.
The background facts are as follows. The Boykin petitioners sued the Andersen respondents on February 28, 1992, making claims based, among other things, on fraud, conspiracy, and negligence. The case was assigned to the Honorable Arthur J. Hanes, Circuit Judge. Boykin amended his complaint on March 5, 1992, to include claims that might become the basis of a class action suit. After discovery began, and after parties on both sides had filed several motions, Judge Hanes issued an order on July 8, 1992, transferring the case to the equity division of the Jefferson Circuit Court. The order stated:
"By amended complaint, the substantial portion of this action appears to be in the nature of a shareholders' derivative action and/or class action. The predominant portions of this action therefore being equitable in nature, the Clerk is hereby directed to reassign this case to the equity division of this court."
On April 28, 1992, BEA sued BBE in the Jefferson Circuit Court, alleging invasion of privacy and conspiracy arising out of codefendant Protective Life Insurance Company's involvement in an employee benefit plan. The action, requesting back pay, a jury trial, and injunctive and declaratory relief, was originally assigned to the Honorable Roger Monroe, Circuit Judge. Upon motion of one of the respondents, Judge Monroe transferred the case to the equity division of the Jefferson Circuit Court.
Both cases were transferred to the equity division under the authority of Administrative Order No. GO-92-1, "Assignment of Circuit and District Judges," issued on February 10, 1992, by Stuart Leach, Presiding Judge of the Tenth Judicial Circuit. Under GO-92-1, Judge Leach assigned the Tenth Circuit judges to the divisions of the circuit and district courts pursuant to the authority vested in him by Act No. 1205, Alabama Acts 1975, the Alabama Rules of Judicial Administration, and the Alabama Rules of Civil Procedure.
Order GO-92-1 does not, on its face, purport to establish an equity division within the Tenth Judicial Circuit. However, Order GO-92-1 does assign "Circuit Judges Marvin Cherner and Jack D. Carl to the Civil Division of the Circuit Court to handle those cases set out in Attachment `A' to this order." Attachment "A" lists 27 types of cases that are assigned to Judges Cherner and Carl, most of which involve claims that might be considered "equitable" in nature, such as declaratory judgments, preliminary injunctions, and class actions. The other nine circuit judges in the Birmingham Division of the Jefferson Circuit Court are assigned by Order GO-92-1 "to handle those cases ... regarded as civil cases under the practice prior to the adoption of the Alabama Rules of Civil Procedure."
The petitioners contend that Order GO-92-1 perpetuates a distinction between law and equity that was abolished in 1973 by the adoption of the Alabama Rules of Civil Procedure, which abolished separate law and equity courts by the merger of law and equity into "one form of action which shall be known as `civil action.'" Rule 2, A.R.Civ.P.; see also Committee Comments, Rule 2, A.R.Civ.P.
The petitioners further contend that the assignment or reassignment of cases within the Jefferson Circuit Court to judges Cherner or Carl in the equity division, based on the presence of any of the predominantly equitable issues listed in Attachment "A" strips the other nine circuit judges of their jurisdiction to hear cases involving these issues, and creates a de *325 facto equity court in violation of the Alabama Rules of Civil Procedure, the Alabama Rules of Judicial Administration, Article VI of Amendment 328 to the Alabama Constitution of 1901 (the "Judicial Article"), and Act 1205, Alabama Acts 1975 (the "Unified Courts Act").[1]
The respondents contend that Order GO-92-1 is purely administrative, because, they argue, it falls within the ambit of a presiding judge's duty to so assign the cases within his or her circuit as to promote the speed and efficiency of the judicial system. The respondents argue that assignment to the equity division is not procedural and does not affect the jurisdiction of the circuit court, but merely involves calendaring and docketing of cases. Therefore, they contend, Order GO-92-1 is administrative in nature and is, thus, authorized by Ala. Code 1975, §§ 12-17-24, 12-11-10, and the Alabama Rules of Civil Procedure, the Alabama Rules of Judicial Administration, Article VI of Amendment 328 to the Alabama Constitution of 1901, and Act 1205, Alabama Acts 1975.
Any circuit court has the power to hear both legal and equitable issues, as provided for by the merger of law and equity effected by the adoption of the Alabama Rules of Civil Procedure in 1973. Ex parte Reynolds, 436 So.2d 873, 874 (Ala.1973); Rule 2, A.R.Civ.P. Each division within a circuit court may hear certain types of cases that are not heard by judges sitting within the other divisions of the same circuit court, in order to promote judicial economy and to speed the disposition of cases, as long as the segregation of cases among the divisions of a circuit court does not run afoul of the Constitution and the laws of Alabama. Thus, circuit courts in our larger judicial circuits may have civil, criminal, juvenile, and family court or domestic relations divisions, if such divisions are lawfully established and maintained.
The Judicial Article requires each division within a circuit court to be authorized by law. The Judicial Article states: "For each [judicial] circuit, there shall be one circuit court having such divisions ... as shall be provided by law." Ala. Const. 1901, amend. 328, § 6.04(a). The equity division of the Tenth Judicial Circuit must, therefore, be "provided [for] by law" in order for the assignment or transfer of cases thereto to be constitutional.
We can find no law created after the merger of law and equity in 1973 that provides for an equity division in the Tenth Judicial Circuit. Order GO-92-1 is patterned after earlier administrative orders issued by presiding judges of the Tenth Judicial Circuit before the merger of law and equity. Before the enactment of the Judicial Article, the legislature had provided for an equity division within the Tenth Judicial Circuit through Title 13, § 160, Alabama Code 1940 (Recomp.1958). Because § 160 maintained a distinction between law and equity, it was inconsistent with, and was therefore repealed by, the Unified Courts Act. See Act 1205, Ala. Acts 1975, § 18-102. Because no express authority provides by law for the equity division, we must determine whether there is any implied authority to establish or maintain the equity division.
Whether the creation and maintenance of the equity division is impliedly "provided by law" depends, in turn, on whether Order GO-92-1 is "administrative" or "procedural" in nature. If the issuance of an order governing transfer and assignment of cases to the equity division is part of the presiding judge's administrative authority, then Order GO-92-1 may be authorized by Alabama laws that provide for administration over his or her circuit by the presiding judge. See Ala.Code 1975, § 12-17-24 (presiding circuit judge exercises general supervision over circuit court judges to ensure "prompt, diligent discharge of their duty"); A.R.Jud.Adm. 16 (presiding circuit court judge determines calendaring of cases within circuit court).
*326 Because the assignment of a case to the equity division under Order GO-92-1 depends on the type of case it is and the content of the case, such an assignment ventures beyond administrative calendar and docket management into the realm of practice and procedure, if not substance. Content-based assignment is a practice bearing on the very nature of each case, and it cannot be dismissed as merely administrative.
Creation of a division within each circuit court to hear matters exclusive to that division means that only certain judges within a circuit court will decide those matters germane to a division. Each circuit court as a whole has jurisdiction over equitable matters, §§ 12-11-30, 12-11-31, and 12-11-33, just as each circuit court has jurisdiction over civil, criminal, and juvenile matters, § 12-11-30 and § 12-15-2. Jurisdiction over divisional matters is still vested in the entire circuit court; a judge receiving a case that belongs in another division may transfer that case to the proper division, but if the transfer is not made, the original judge still retains jurisdiction over the case. See Ex parte Birmingham So. R.R., 473 So.2d 500, 502 (Ala.1985) (Shores, J., concurring).
The transfer of a case by one court to another must be expressly authorized by statute. Our Court of Appeals said that an equity court having jurisdiction over a case had "no power, in the absence of statutory provision, to transfer the case to the circuit court and [that] the refusal to do so did not constitute reversible error." Allen v. Zickos, 37 Ala.App. 361, 364, 68 So.2d 841, 843 (1953). That case relied on the following principle:
"`Unless expressly authorized so to do, a court has no authority to transfer a cause from itself to another court, and thereby give the other court possession of the case to hear and determine it, although the other court would have had jurisdiction of the cause if it had come to it by due process.' 21 C.J.S., Courts, § 502, p. 769...."
Id. (Other citations omitted.) We consider that a sound principle. Therefore, the transfer of the petitioners' cases to the equity division must be expressly authorized by statute. Because we can find no express authorization for the transfer of a case from the civil division to the equity division, we conclude that such a transfer is unlawful.
We now address whether the creation and maintenance of the equity division itself is provided by law. We note that other circuit court divisions are expressly authorized by law.[2] Therefore, creation and maintenance of an equity division, wherein only certain judges within a circuit have the power to hear certain types of cases, are matters that must also be expressly authorized by law.
The order relied on as authority for maintaining the equity division within the Jefferson Circuit Court, Administrative Order GO-92-1, is a local court rule. Other divisions of the circuit court to which cases are assigned, based on content or type of case, are authorized by laws of statewide application, not by local court rules. Rule 83, A.R.Civ.P., was recently amended to abolish local procedural court rules as of April 14, 1992:
"`Local rules' take many forms; they are often called `administrative procedures' or `court administrative orders.' However denominated, all such rules regulating *327 practice or procedure are abolished, and no such rules will be permitted in the future.
"The abolition of local rules does not prevent the trial court from issuing orders that are essential to the administration of its docket in areas outside the scope of the Alabama Rules of Civil Procedure."
Committee Comments, Rule 83, A.R.Civ.P.
The purpose of the Judicial Article is to create "a unified court system with uniform jurisdiction for each of the several courts established therein," and with uniform rules of procedure applicable to all citizens. Green v. Austin, 425 So.2d 411, 413 (Ala.1982). To that end, this Court has a constitutional mandate to ensure uniformity in practice and procedure from one circuit to the next, and "to promulgate and implement rules binding on inferior courts as to which we are charged with superintendence and control." Ex parte Ward, 540 So.2d 1350, 1351 (Ala.1988) (relying on Const. of 1901, amend. 328, § 6.11). "[W]hen the Legislature gives the court the power to make rules and the court acts, the rules become of `legislative origin in substance.'" Holsemback v. State, 443 So.2d 1371, 1374 (Ala.Crim.App.1983). A general act of statewide application is required to change these rules, which ensure uniform practice and procedure. Green, supra, at 414.
Thus, an important goal of the Uniform Courts Act and of the Judicial Article, as shown by the recent amendment to Rule 83 abolishing local control over practice and procedure in the courts of this state, is to ensure a uniform system of practice and procedure throughout the courts of Alabama. This Court has a duty to supervise the courts of this state and to promote uniform practice and procedure therein. We would be remiss in our duty were we to permit any practice not provided by law to continue in one circuit court that does not exist in any other circuit court.[3]
Because, other than the equity division, all circuit court divisions not based on venue are expressly provided for by statewide laws, and because transfer or assignment of cases to the equity division occurs because of the subject matter and is, thus, procedural, and because Rule 83 forbids the use of local court rules to govern practice and procedure, it follows that only a statewide law can create or maintain an equity division within the Jefferson Circuit Court.[4] We can find no statewide authority providing, by law, for the equity division of the Tenth Judicial Circuit. We also find no authority to distribute cases to a division of the circuit court based on the presence of equitable issues; indeed, such a distribution fosters the distinction between law and equity that was abolished by the Alabama Rules of Civil Procedure in 1973, and it cannot be allowed to continue. Even though the equity division is not a pure equity court, and cases tried there may be by jury and often involve legal as well as equitable issues, the content-based assignment to the equity division of those cases involving equitable issues creates an appearance of impropriety and should not be allowed, because such an assignment perpetuates, to some degree, the distinction between law and equity abolished in 1973.
For these reasons, that portion of Order GO-92-1 that provides for assignment or *328 transfer of the types of cases listed in Attachment "A" to equity division Judges Carl and Cherner is unconstitutional, and the equity division is therefore not provided for by law as required by Ala. Const., amend. 328, § 6.04(a).
Having determined that transfer or assignment of cases to the equity division pursuant to Order GO-92-1 is not authorized under Alabama law, we must now determine if mandamus is the appropriate remedy.
"It is well established that mandamus is a drastic and extraordinary writ to be issued only where there is 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court."
Ex parte AmSouth Bank, N.A., 589 So.2d 715, 717 (Ala.1991) (citation omitted).
The petitioners do not claim a right to have their cases heard by a judge of their own choosing. Rather, they assert that they "have a clear legal right to have their claims heard by the impartial circuit judges to whom these cases were properly and randomly assigned at their inception." (Reply Brief of Boykin petitioners at 1.) We note that any litigant in the state of Alabama should have a right to a trial by a fair and impartial judicial process. Content-based transfer of cases to the equity division is unconstitutional, because, as shown above, the equity division is not "provided by law" as required by constitutional amendment 328. Because transfer to the equity division is unlawful, allowing the transfers complained of by the petitioners to stand would be contrary to the fair and impartial judicial process that is so necessary to promote public confidence in our legal system.
The petitioners do have a clear legal right to have the orders transferring their cases to the equity division vacated, because the transfer orders themselves, and Order GO-92-1 on which they rely, are not authorized by law. The petitioners do not, however, have an absolute right to have their cases tried before the judge originally assigned.[5]
None of the parties contends they could not receive a fair trial before the equity division or that the equity division judges who are members of the civil division of the Jefferson Circuit Courtdo not have jurisdiction to hear their claims.[6] Rather, one contention made by the petitioners is that the transfer to an equity division judge, in addition to being unlawful, disrupts the ongoing trial process and cannot promote a just, speedy, and inexpensive determination of their cause.
Because transfer to the equity division is unlawful, requiring the petitioners to appeal their causes individually after a trial in the equity division would not promote judicial efficiency, and it certainly would not "secure the just, speedy and inexpensive determination" of their actions. Rule 1(c), A.R.Civ.P. Furthermore, the issue would become moot as to these litigants should they be forced to raise on appeal the legality of the transfer to equity, because the equity division judges do have the power to adjudicate the petitioners' civil claims, as do the rest of the civil division judges of the Jefferson Circuit Court. See Elmore County Comm'n v. Ragona, 540 So.2d 720, 725 (Ala.1989) (mandamus appropriate to prevent trial in the wrong forum). Therefore, the petitioners have no adequate *329 remedy by appeal, and mandamus is appropriate in both cases.
For the above reasons, the writs of mandamus are granted.
WRITS GRANTED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., dissents.
HOUSTON, Justice (dissenting).
"Mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Adams, 514 So.2d 845, 850 (Ala. 1987).
I find no clear legal right in the petitioners to the order sought and no imperative duty upon the Honorable Arthur J. Hanes, Jr., the Honorable Jack Carl, the Honorable Roger Monroe, or the Honorable Stuart Leach to perform. Because the four essential elements are in the conjunctive, I dissent.
The petitioners have no clear legal right to the order sought and the circuit judges have no imperative duty to perform, for the following reasons.
Title 13, § 160, Code of Alabama 1940, provided that a court such as the 10th Judicial Circuit Court "shall have three separate divisions; an equity division, a criminal division, and a law division; and [that] the judges of such circuits shall serve or sit in such division and perform such duties in any division as they may be directed from time to time by the presiding judge."
This was not repealed by Acts of Alabama 1975, Act No. 1205, page 2384. This Act "[r]epeals sections 157, 158, 159, 179, 180, and 181 of Title 13 of the Code of Alabama 1940" (page 2384). The title to the Act does not address the abolition of the three separate divisions of certain circuit courts (Title 13, § 160). The Act 1205 amendment of § 1 of Title 13, Code of Alabama 1940, provides in pertinent part: "The judicial power of the state is vested exclusively in a unified judicial system which shall consist of ... a trial court of general jurisdiction known as the circuit court"; that amendment does not impliedly repeal Title 13, § 160 (page 2387). The clause "The presiding circuit judge shall exercise a general supervision of judges..." (page 2387) does not impliedly repeal Title 13, § 160. No other provision of Act No. 1205 expressly or impliedly repeals Title 13, § 160. Section 6.11 of Amendment 328 of the Constitution of Alabama of 1901 provides in pertinent part: "The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts.... These rules may be changed by a general act of statewide application."
Rule 2, A.R.Civ.P. provides: "There shall be one form of action to be known as `civil action.'" I do not see how this rule impliedly repealed Title 13, § 160. The distinction between law and equity is retained for many purposes (e.g., in regard to the right to trial by jury); therefore, I do not see how it could be held that the rule referring to "one form of action" abolished the equity and law divisions of the circuit court of the 10th Judicial Circuit.
The listing in "Appendix II. Statutes and Rules Superseded," contained in West Publishing Company's Alabama Rules of Court 1992, at pages 152-162, does not indicate that Title 13, § 160, was superseded by the Alabama Rules of Civil Procedure. I recognize the disclaimer at the beginning of Appendix II; however, I find comfort in knowing that the distinguished members of this Court's Advisory Committee on Rules of Civil Procedure did not consider that Title 13, § 160, had been superseded by the Rules of Civil Procedure.
Finally, a certain general act of statewide application requires a holding that Rule 2 could not impliedly repeal or supersede Title 13, § 160. Alabama Code 1975, § 12-1-22, provides:

*330 "The adoption of this Code shall not repeal or amend any statute in effect on the effective date of this Code which is applicable only with respect to one or more judicial circuits of the state, whether such judicial circuits are identified by specific reference thereto, on the basis of population or by any other method of identification or classification; nor shall the adoption of this Code be deemed to repeal any general law, general law of local application or local law in effect on the effective date of this Code relating to the appointment, ... [or] duties ... of any court personnel."

(Emphasis added.)
I have no authority to determine that Order GO-92-1 is not authorized under Alabama law. To the contrary, for all that I can find, this order complies with Title 13, § 160, Code of 1940, and Alabama Code 1975, § 12-1-22. Therefore, I must conclude that the petitioners have no clear legal right to the order sought and that the judges have no imperative duty to perform.
I would deny the writs; therefore, I dissent.
NOTES
[1] The Unified Courts Act is the implementing legislation for Amendment 328 to the Alabama Constitution of 1901.
[2] For all circuits of this state, a juvenile division is authorized by Act 1205, § 5-103(a); a domestic relations division by Act 388, Alabama Acts 1976, § 1 (amending § 6-118 of the Unified Courts Act); and a criminal division by Rule 6(C), A.R.Jud.Admin.

Divisions based on venue speed the judicial process in some circuits by dividing the circuit geographically. The Bessemer Division of the Jefferson Circuit Court is authorized by Local Act No. 213, Alabama Acts 1919, and has been recognized by this Court. United Supply Co. v. Hinton Constr. & Dev., Inc., 396 So.2d 1047, 1049 (Ala.1981); Birmingham Fed. Sav. & Loan Ass'n v. Buddy's Marineland, Inc., 545 So.2d 16, 17 (Ala.1989). Likewise, the Elba and Enterprise Divisions of the Coffee Circuit Court are authorized by Act No. 360, Alabama Acts 1903, §§ 1, 3. Ex parte Humana, Inc., 462 So.2d 922, 923 (Ala.1985).
[3] Of course, divisions such as the Bessemer Division, based on venue over matters that may arise within their geographic bounds, as well as on the jurisdiction of the circuit court, are unique to the counties where they operate.
[4] Creation and maintenance of the civil, criminal, domestic relations, and juvenile divisions of the circuit courts are rooted in the jurisdiction over these matters vested in the circuit courts by the Unified Courts Act and other laws of Alabama. Supra, note 2.

Rule 6(C), A.R.Jud.Admin., which is a law of statewide application, allows a presiding judge to submit "[p]roposals for the creation and maintenance of divisions [within the circuit court] which are to take effect after October 1, 1987," to this Court for approval. The rule provides that "[a]ll authorizations for [circuit court] divisions ... may be subject to annual review by the Supreme Court." We have received no proposal for the creation or maintenance of an equity division within the Jefferson Circuit Court, nor can we approve of an allocation of cases to any division based on the presence of equitable matters.
[5] As Presiding Judge Leach notes in his reply brief, reassignment to other judges is often necessary for many reasons, such as the handling of a complex case that precludes a judge from other work, or the temporary disability of a judge. (Reply Brief for Respondent Judge Stuart Leach at 5).
[6] In Ex parte Reynolds, 447 So.2d 701, 703 (Ala. 1984), we denied a request in a petition for writ of mandamus to transfer a case from the equity division to the law division of the Jefferson Circuit Court because the petitioner's allegation that he could not have an adequate legal remedy in the equity division of the circuit court was invalid. The petitioners here challenge the transfer of their cases to the equity division as unlawful and do not contend that they lack an adequate legal remedy in the equity division. The legality of the equity division was not an issue in Reynolds; therefore, that case does not control the issue before us today.