MADDOX, Justice.
This petition for a writ of mandamus raises two issues: (1) Whether cases originally assigned to the equity division of the Tenth Judicial Circuit, based on their content, are due to be reassigned, given this Court’s recent holding in Ex parte Boykin, 611 So.2d 322 (Ala.1992); and (2) Whether the trial court abused its discretion when it entered “default” judgments against James D. Blake in two of his cases (CV-90-7671 and CV-91-0704) as a discovery sanction under Rule 37, Ala.R.Civ.P.

FACTS

This litigation relates to an ongoing dispute over control of a small, closely held corporation between its principal shareholders, James D. Blake, the petitioner, and D. Bruce Irwin, the respondent. The company, American Family Care, Inc. (“AFC”), operates a chain of six free-standing medical clinics in the greater Birmingham area. In Irwin, et al. v. Blake, et al., CV-90-7671, Irwin alleges that he is entitled to recover on behalf of the corporation for various alleged breaches of fiduciary duty by Blake while Blake was in control of the corporation. In Blake v. Irwin, et al., CV-91-0704, Blake alleges that Irwin breached his fiduciary duty after Irwin assumed voting control over the majority of AFC stock after, in an earlier related case, the trial court had imposed a constructive trust over a controlling block of stock and had given Irwin the right to vote a majority of the shares held in constructive trust. See American Family Care, Inc. v. Irwin, 571 So.2d 1053 (Ala.1990); and Blake v. American Family Care, Inc., 599 So.2d 5 (Ala.1992).
I.
We now address the first issue presented, that is, whether these cases, which were originally assigned to the “equity division” of the Tenth Judicial Circuit, based on their content and the nature of the relief sought, are due to be reassigned, given this Court’s recent holding in Ex parte Boykin, 611 So.2d 322 (Ala.1992). In other words, should the Boykin decision be applied retroactively? We hold that it should not be.
*530 In Ex parte Boykin, this Court held that the practice of assigning certain cases filed in the Birmingham Division of the Circuit Court of Jefferson County to the “equity division” of that circuit was unconstitutional. The Court stated in Boykin:
“We can find no statewide authority providing, by law, for the equity division of the Tenth Judicial Circuit. We also find no authority to distribute eases to a division of the circuit court based on the presence of equitable issues; indeed, such a distribution fosters the distinction between law and equity that was abolished by the Alabama Rules of Civil Procedure in 1973, and it cannot be allowed to continue. Even though the equity division is not a pure equity court, and cases tried there may be by jury and often involve legal as well as equitable issues, the content-based assignment to the equity division of those cases involving equitable issues creates an appearance of impropriety and should not be allowed, because such an assignment perpetuates, to some degree, the distinction between law and equity abolished in 1973.”
611 So.2d at 327.
The petitioner argues that this language in Boykin indicates that this Court intended to reach substantially beyond the facts of Boy-kin and to strike down in its entirety the practice of transferring cases to the “equity division” from the “law division,” to cover cases filed before the release of Boykin, as well as those filed after Boykin.
The petitioner reasons that the posture of the Boykin case was not different from the posture of this case, and that Boykin requires that all pending cases that have been unconstitutionally assigned to the “equity division” of the Tenth Judicial Circuit but in which no judgment has been rendered must be reassigned at random when a party files a motion, as this petitioner did, to have a case reassigned. We do not agree.
In Ex parte Coker, 575 So.2d 43, 51 (Ala.1990), this Court held that in order to determine whether to give retrospective application to a holding that declares an act unconstitutional, the court must consider matters of public policy. If we apply the doctrine of that ease, then one of the matters we should consider is whether the retrospective application of the decision would adversely impact on the efficient administration of justice.
We could, of course, declare that the practice of assigning cases to the “equity division” and the “law division” was constitutionally prohibited and that all cases improperly assigned must be reassigned. In our opinion, such a holding would not foster the orderly administration of civil justice in this State. We hold that the retrospective application of the Boykin principle to all pending cases in the Tenth Judicial Circuit would not “secure the just, speedy and inexpensive determination” of every action upon its merits, but, in fact, could have the contrary effect. Rule 1, Ala.R.Civ.P.[1]
Clearly, in deciding Boykin, this Court did not intend to decrease the pace at which cases are resolved in the Tenth Judicial Circuit. Indeed, in striking down the distinction based on the presence of equitable issues, we held that the practice “[could not] be allowed to continue.” Boykin, 611 So.2d at 327. The use of these words in the Boykin case suggests that the Court intended that Boy-kin apply only to cases filed in the future. Had this Court intended to have the Boykin rule apply retroactively, the Court could have, and probably would have, said so.
Based on the foregoing, we hold that the principles announced in Boykin are to be *531 applied prospectively from the date of that opinion, December 4, 1992.
II.
The second issue presented is whether the trial court abused its discretion when it entered default judgments against Blake in CV-90-7671 and CV-91-0704 as a discovery sanction under Rule 87, Ala.R.Civ.P.
On September 10, 1991, Judge Carl entered default judgments against Blake because of Blake’s alleged refusal to appear for depositions and to produce documents. The events leading up to the entry of default judgments in these cases are as follows:
On December 13, 1990, APC noticed the deposition of Blake, to take place on December 27, 1990. The deposition did not take place as noticed. On February 6, 1991, the AFC noticed the deposition of Blake, to take place on March 8, 1991. This deposition did not take place, because, after the notice was issued, a conflict arose in AFC’s counsel’s schedule.
On April 26, 1991, AFC issued another notice of deposition, including a Rule 30(b)(6), Ala.R.Civ.P., document request, setting the deposition of Blake for May 17, 1991. This deposition did not take place, and counsel for Blake asked that it be rescheduled to May 30, 1991. On May 3, 1991, AFC re-noticed the deposition of Blake for May 30, 1991. This May 3,1991, notice also included a Rule 30(b)(6) document request. Late in the afternoon on May 29, 1991, counsel for AFC received a telephone call from the secretary to Blake’s counsel; the secretary indicated that Blake had been unable to find a doctor to substitute for him at his medical practice and would, therefore, be unable to appear for his deposition the next morning.
After Blake failed to attend the fourth deposition setting, AFC filed a motion to compel, asking the court to enter an order requiring Blake to sit for a deposition and to produce the documents that had been previously requested. This motion to compel was served upon Blake’s counsel, with a notice of hearing, but no one appeared on Blake’s behalf at the date and time that the motion was to be heard. The trial court granted the motion to compel and entered a written order, dated June 12,1991, for Blake to submit within seven days a notice of a date and time at which he would appear for deposition and would produce the documents that had been previously requested. On June 19, 1991, counsel for Blake submitted such a date— July 11, 1991. On June 19, 1991, AFC re-noticed the deposition of Blake for July 11, 1991, and, once again, requested that Blake produce certain documents at his deposition, pursuant to Rule 30(b)(5). On the day before the deposition was to take place, Blake served upon AFC a response to the document production request attached to the notice of deposition, objecting to production of many of the documents that had been previously requested on two other occasions and that were the subject of the June 12, 1991, order.
The deposition of Blake took place on July 11, 1991. Blake did not bring documents or other tangible things to the deposition. Blake failed to file an objection to the Rule 30(b)(5) document request within five days of the deposition notice and sought no protective order before the deposition to protect himself from the consequences of violating the June 12, 1991, order. On September 10, 1991, Judge Carl entered “default” judgments against Blake as a sanction pursuant to Rule 37(b)(2)(C), Ala.R.Civ.P., because of what he considered to be a pattern of refusing to appear for depositions and to produce documents.
The entry of a default judgment for failure to comply with a discovery order is the most severe sanction a court may apply. Ultracashmere House, Ltd. v. Meyer, 407 So.2d 125 (Ala.1981). Because of that fact, Blake argues that Judge Carl’s actions, based on the facts of this record, show a clear abuse of discretion. In fact, Blake states that “Judge Carl is apparently dissatisfied with this Court’s earlier rulings and is determined for Irwin to win this case even if it means denying Dr. Blake his day in court.”
Blake further argues that the sanction imposed by the trial court was totally disproportionate to the violation, and that, to the extent his activities resulted in any real prejudice, the prejudice to the respondent *532 was the cost of the delay (i.e., additional lawyer time and court reporter expense) and that the appropriate sanction, if any, would be monetary compensation for that delay, not a “default” judgment or a dismissal.
The respondent points out, however, that Blake not only failed to sit for his deposition as noticed, but also failed to comply with an order of the trial court.[2] Rule 37(b)(2)(C), Ala.R.Civ.P., authorizes the trial court to enter a default judgment against a party who fails to comply with a discovery order. In Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989), the Court stated:
“We recognize that the sanction of dismissal is the most severe sanction that a court may apply. Judicial discretion must be carefully exercised to assure that the situation warrants the imposition of such a sanction. Dismissal orders must be carefully scrutinized, and the plaintiffs conduct must mandate dismissal. We have held that ‘willfulness’ on the part of the noncomplying party is a key factor supporting a dismissal. If one party has acted with willful and deliberate disregard of reasonable and necessary requests for the efficient administration of justice, the application of even so stringent a sanction as dismissal is fully justified and should not be disturbed.”
(Citations omitted.) We have carefully examined the facts and circumstances surrounding Blake’s claim, and we conclude that he has shown no abuse of discretion by the trial court. The trial court could find from the evidence that Blake had been given ample opportunity to sit for his deposition and to produce the documents that had been requested, and that Blake had been warned that a default judgment would be entered if he failed to do so. Blake chose to attend the deposition without the documents, in spite of the trial court’s order that his failure to produce these documents at the deposition would result in the entry of a default judgment against him. The evidence indicates that Blake knowingly disregarded the trial court’s order. The trial judge did not abuse his discretion; therefore, the petition for writ of mandamus is due to be denied.
WRIT DENIED.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.

. Judge Jack Carl and Judge Marvin Cherner, the former "equity division” judges in the Tenth Circuit, jointly have in excess of 1,000 cases pending before them that could be reassigned randomly to all the judges within the Tenth Judicial Circuit should we require the retroactive application of Boykin. Furthermore, if we were persuaded by the petitioner's argument, it could also be logically argued that the pre-Boykin "law division” cases still pending in the Tenth Judicial Circuit should be reassigned in light of the fact that the parties participating in the "law division” cases were improperly precluded from having the opportunity to have their cases heard by Judge Carl or Judge Cherner. If we were to adopt the petitioner’s position, the result would likely be that many cases that are set for trial before Judges Carl and Cherner, as well as many cases set for trial before the other judges in the Tenth Judicial Circuit, could lose their trial settings because of reassignment.

. By the order entered on June 12, 1991, Blake was directed by the trial court to submit, within seven days, a date for his deposition and to attend the deposition and produce the documents that had previously been requested in the notice of deposition. Blake arranged and attended the deposition, but failed to bring documents that had been requested. AFC contends that Blake failed to timely object with respect to the inspection or copying of the designated material and thus violated the trial court’s June 12, 1991, order.